883 A.2d 1074 (2005)
380 N.J. Super. 596
VISITING HOMEMAKER SERVICE OF HUDSON COUNTY, Plaintiff-Respondent,
v.
BOARD OF CHOSEN FREEHOLDERS OF the COUNTY OF HUDSON and County of Hudson Department of Health and Human Services, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued telephonically September 15, 2005.
Decided October 7, 2005.
*1076 Cindy Nan Vogelman, Secaucus, argued the cause for appellants (Chasan, Leyner, & Lamparello, attorneys; Ms. Vogelman, of counsel and on the brief; Nicole R. Chhabria, on the brief).
Joseph Maddaloni, Jr., Morristown, argued the cause for respondent (Porzio, Bromberg & Newman, attorneys; Mr. Maddaloni and Frank A. Custode, on the brief).
Brennan Center for Justice at New York University School of Law and New Jersey Institute for Social Justice, counsel for amici curiae Brennan Center for Justice at New York University School of Law, New Jersey State League of Municipalities, Jubilee Interfaith Organization, Interfaith Community Organization, New Jersey Institute for Social Justice, Legal Services of New Jersey, Acorn Living Wage Resource Center, and New Jersey Acorn in Support of Appellant Hudson County (Nathan Newman, Craig Levine, Paul K. Sonn, and Jonathan Gass, on the brief).
Before Judges CUFF, LINTNER and GILROY.
The opinion of the court was delivered by
LINTNER, J.A.D.
This, a case of first impression in New Jersey, requires us to determine the validity of Hudson County's 2003 Living Wage Ordinance (the Ordinance), which directs contractors to provide an increased minimum wage and mandatory health benefits to their employees providing food, janitorial, unarmed security guard, and home health care services to the County. Plaintiff, Visiting Homemaker Service (VHS), a company that had previously been selected by Hudson County (the County) to provide health care to county residents, sought to prevent the County from imposing its amended Ordinance requiring plaintiff to provide its employees with certain health benefits and pay them a wage equal to *1077 one-hundred and fifty percent of the federal minimum wage. We hold that the Ordinance does not possess the infirmities found to exist by the Law Division judge and reverse his order invalidating it as contrary to the State's bidding laws, preempted by the State minimum wage law, N.J.S.A. 34:11-56a4, and violative of constitutional equal protection guarantees.
After the judge invalidated the Ordinance and during the pendency of this appeal, the County continued to provide its residents with home health care services by entering into contracts with contractors as it had done prior to the adoption of the challenged Ordinance. Also while this appeal was pending, the Legislature amended N.J.S.A. 34:11-56a4 to expressly permit political subdivisions to enter into agreements and establish standards providing wages and protections greater than those required by state or federal law. At oral argument, we were advised by counsel that, as a result of the amendment to N.J.S.A. 34:11-56a4, the County is currently in the process of proposing a new 2005 ordinance reestablishing a Living Wage and providing for defined health benefits.[1] Although we express certain concerns over the sufficiency of the challenged Ordinance because it does not address a means to determine what minimum health benefits must be provided to home health service workers by prospective contractors, we decline to decide the issue raised as it too is rendered moot by the amendment to N.J.S.A. 34:11-56a4 and the County's consideration of a new ordinance.
We restate the undisputed procedural history and relevant facts. Plaintiff is a non-profit home health care organization that employs approximately 650 Certified Home Health Aides, providing home health care services to sick, elderly, and disabled residents of the County. Most of plaintiff's employees are members of the United Service Workers of America, Local 306, with which it has had collective bargaining since 1983. Plaintiff has provided home health care services, housekeeping services, and respite care services to the County's Department of Health and Human Services for over forty years. Until 1999, plaintiff contracted with the County to provide those services without competitive bidding by other providers because the Local Public Contracts Law exempted non-profit home care agencies from bidding requirements. In 1999, the Local Public Contracts Law was amended to utilize competitive contracting in lieu of public bidding for home health care service contracts, N.J.S.A. 40A:11-4.1.
Also in 1999, the County enacted its first Living Wage Ordinance, No. 22-1-1999. It provided that contractors who supply food service workers, janitorial workers, and unarmed security guards to the County must provide certain minimum pay and benefits to those employees who work at least twenty hours per week. Specifically, the first Ordinance required such employees to receive:
1. The hourly rate of pay of one hundred and fifty percent of the Federal Minimum Wage at the time the contract is bid; and
2. An annual paid vacation of five days after twelve months of employment; and
3. Medical benefits shall be provided for each employee.
On February 28, 2002, the County amended the 1999 Living Wage Ordinance. The 2002 amendment, which included *1078 health service workers as a new category of contract employees, provided:
Such food service workers, janitorial workers, health service workers and unarmed security guards who work at least 20 hours per week at various County of Hudson work sites under contract or with the county shall receive the following minimum pay and benefits:
1. The hourly rate of pay of one hundred and fifty percent of the Federal Minimum Wage at the time the contract is bid or renewed or proposals received; and
2. An annual paid vacation of five days after twelve months of employment; and
3. Medical benefits shall be provided by the employer at the employer's expense for each employee within 60 days of hiring.
The amendment, which took effect on July 1, 2002, did not immediately affect plaintiff because plaintiff was under contract to provide home health care to the County until December 31, 2002. That date was later extended to April 1, 2003.
On February 21, 2003, the County held a "pre-application conference" for home health care agencies interested in submitting competitive bids to provide the County with services from April 1, 2003 to December 31, 2003. At the meeting, the County distributed a "Notice of Available Funding," which instructed the bidders that they must comply with the County's Living Wage Ordinance. Bidding for home health aide contracts was scheduled to open on March 14, 2003. On March 14, 2003, plaintiff filed its bid and simultaneously filed an Order to Show Cause and Verified Complaint with the Law Division, seeking to restrain the County from enforcing its Living Wage Ordinance. The County consented to an extension of the deadline for receipt of bids until April 14, 2003, to allow the Law Division to consider plaintiff's application. Thereafter, the parties agreed to extend plaintiff's services contracts through December 31, 2003, "to minimize disruption to the patients receiving home health care."
Meanwhile, on June 26, 2003, the County proposed a further amendment to the Living Wage Ordinance. Ordinance No. 362-6-2003 enumerated "a series of policy considerations underlying its enactment in an effort to avoid creation of a sub-stratum of low paid contract employees, as compared with direct County employees, while simultaneously acknowledging the high cost of living in Hudson County." Additionally, the amendment provided:
For the purposes of this Ordinance, and to conform with the County of Hudson personnel practices, a food service worker, janitorial worker, security guard, or health service worker is a covered employee if he/she has worked 20 hours or more per week in the preceding 60 days. In the event that a covered employee works less than 20 hours per week for a 30 day period, he/she shall be provided with notice of benefit termination to take effect 30 days thereafter. If the food service worker, janitorial worker, security guard or health service worker re-commences working 20 hours or more during the 30 day notice of termination period, his/her benefits shall resume.
The amendment also included the following changes:
Such food service workers, janitorial workers, security guard and health service workers ... shall receive the following minimum pay and benefits.
1. The hourly rate of one hundred and fifty percent of the Federal Minimum Wage at the time the contract *1079 is bid or renewed or proposals received; and
2. An annual paid vacation of five days after twelve months of employment. Covered employees regularly working fewer than 40 hours per week shall be paid a prorated portion of an 8-hour day of each vacation day required under this Section; and
3. Medical benefits shall be provided by the employer at the employer's expense for each employee within 60 days of hiring or, in lieu of medical benefits and at the exclusive option of the employer, each employee shall be paid a wage rate of no less than the sum of the current living wage as defined in this Section plus the health benefits supplement rate. The health benefits supplement rate shall be $2.00 per hour beginning in 2003, and each year shall be adjusted in proportion to the increase or decrease, if any, during the preceding 12 months in the Consumer Price Index for Medical Care for the New York-Northern New Jersey-Long Island MSA. The health benefits supplement rate shall be in addition to the hourly rate of any employee covered by this Ordinance.
The 2003 amendment also allowed the collective bargaining representative for covered employees to waive the Ordinance until any current collective bargaining agreement expired.
On July 10, 2003, the County Board of Freeholders held a public hearing on the 2003 amendment. Plaintiff's representatives appeared and voiced their opposition while members of Local 306 spoke in favor of the proposed amendment. The Freeholders unanimously adopted the amendment. On July 28, 2003, plaintiff amended its complaint, seeking to set aside the amended version of the Ordinance. The Law Division judge heard oral argument on plaintiff's challenge to the Ordinance. On December 19, 2003, plaintiff sought a stay of the Ordinance pending the decision of the Law Division because the County had scheduled December 23, 2003, to award contracts. A hearing was held on December 23, at which time the judge announced his decision from the bench invalidating the Ordinance. An order memorializing the judge's decision was entered on January 2, 2004. The County filed its notice of appeal, and on February 24, 2004, the judge filed a supplemental letter opinion. R. 2:5-1(b). The judge found: (1) the Ordinance violated plaintiff's constitutional rights to equal protection; (2) the medical benefits provision of the Ordinance was impermissibly vague; (3) the rationale for adoption of the Ordinance ran counter to the public and competitive bidding laws and the mandatory minimum wage, which require a county to obtain services at the lowest price;[2] and *1080 (4) the wage provision was preempted by the State minimum wage law, N.J.S.A. 34:11-56a. We granted leave to the William Brennan Center for Justice at the New York University School of Law (the Brennan Center) to participate as amicus curiae.
On appeal, the County asserts that the judge erred in his findings. The Brennan Center essentially supports the position taken by the County on appeal. At oral argument before us, the County asserted and plaintiff conceded that the amendment to N.J.S.A. 34:11-56a4, permitting the County to establish wage and protection standards greater than those required by state or federal law, renders moot its argument that the County is preempted by statute from imposing a living wage or medical benefits.[3] We agree that the recent amendment to N.J.S.A. 34:11-56a4 is a subsequent development that renders moot any further issues raised regarding the County's authority under its police power, to adopt a Living Wage Ordinance. Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303-04, 344 A.2d 769 (1975); Sente v. Mayor & Mun. Council of Clifton, 66 N.J. 204, 205, 330 A.2d 321 (1974).
Notwithstanding the intervening change in the minimum wage law, plaintiff asserts that the judge correctly ruled that the Ordinance violated plaintiff's constitutional rights to equal protection and the medical benefits provision of the Ordinance was unconstitutionally vague. At oral argument, we asked the parties if the County's current consideration of a newly proposed ordinance, together with the change in the minimum wage law, rendered the remaining issues raised in this appeal moot. They responded that the same constitutional concerns raised here would necessarily be applicable in any future living wage ordinance adopted. We, therefore, focus on the constitutional issues presented.
The general principles are well settled. Under its police power, a County is authorized to pass "whatever ordinances and resolutions it deems necessary and proper for the good governance of the county." N.J.S.A. 40:41A-41, -55, -67, -81. A statute or ordinance is presumed to be constitutional and it will not be declared void unless it is clearly repugnant to the Constitution. General Motors Corp. v. City of Linden, 150 N.J. 522, 532, 696 A.2d 683 (1997); Paul Kimball Hosp., Inc. v. Brick Twp. Hosp., Inc., 86 N.J. 429, 447, 432 A.2d 36 (1981); Brunetti v. Borough of New Milford, 68 N.J. 576, 599, 350 A.2d 19 (1975); Harvey v. Bd. of Chosen Freeholders of Essex County, 30 N.J. 381, 388, 153 A.2d 10 (1959); Singer v. Twp. of Princeton, 373 N.J.Super. 10, 19, 860 A.2d 475 (App.Div.2004); WHS Realty Co. v. Town of Morristown, 323 N.J.Super. 553, 562, 733 A.2d 1206 (App.Div.), certif. denied, 162 N.J. 489, 744 A.2d 1211 (1999). The burden of establishing that legislation is unconstitutional rests with the challenging party. State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998); Fanelli v. City of Trenton, 135 N.J. 582, 589, 641 A.2d 541 (1994); State v. Golin, 363 N.J.Super. 474, 481-82, 833 A.2d 660 (App.Div.2003). While the presumption may be rebutted, the burden on the party seeking to overturn a law is a heavy one. State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 45-46, 590 A.2d 191 (1991); Quick Chek Food Stores v. Twp. Of Springfield, 83 N.J. 438, 447, 416 A.2d 840 (1980); Singer, supra, 373 N.J.Super. at *1081 19, 860 A.2d 475. When determining the validity of a statute on constitutional grounds, it is presumed that "the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner." State v. Profaci, 56 N.J. 346, 349, 266 A.2d 579 (1970). Thus, the presumption will not be overcome, and a "legislative enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt." Singer, supra, 373 N.J.Super. at 20, 860 A.2d 475 (citing Paul Kimball Hosp., Inc., supra, 86 N.J. at 447, 432 A.2d 36).
The presumption of legislative validity is particularly strong respecting enactments protective of the public health, safety, or welfare. In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 497, 561 A.2d 1160 (1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990). A governmental subdivision "has the power, in the interests of the common good, to enact all manner of laws reasonably designed for the protection of the public health, welfare," and safety, albeit not so as to violate a fundamental constitutional right. Gundaker Cent. Motors, Inc. v. Gassert, 23 N.J. 71, 78-79, 127 A.2d 566 (1956), appeal dismissed, 354 U.S. 933, 77 S.Ct. 1397, 1 L.Ed.2d 1533 (1957); Gallagher v. City of Bayonne, 106 N.J.Super. 401, 405, 256 A.2d 61 (App.Div.), aff'd o.b., 55 N.J. 159, 259 A.2d 912 (1969). Furthermore, in the exercise of the police power, a governmental subdivision is presumed to have acted upon adequate factual support. Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564, 350 A.2d 1 (1975). The Court stated:
This presumption can be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest. The judiciary will not evaluate the weight of the evidence for or against the enactment nor review the wisdom of any determination of policy which the legislative body might have made.
[Id. at 565 (citations omitted).]
With these principles in mind, we examine the specific grounds upon which the judge found the Ordinance constitutionally invalid.

EQUAL PROTECTION
Plaintiff asserts that the judge properly found the Ordinance violated plaintiff's due process equal protection rights because it arbitrarily applies only to certain employers, lacks a factual basis to support the legislative purpose, and lacks a rational basis. The County counters, asserting that the judge erred in finding that the Ordinance violated plaintiff's equal protection and due process rights. Specifically, the County contends that its Ordinance evinces a rational basis for extending the additional wages and benefits to enumerated workers, a legitimate legislative purpose, and is neither arbitrary nor discriminatory. In striking down the Ordinance as violative of equal protection, the judge wrote:
I found that the Ordinance was violative of plaintiff's right to "equal protection" in that it has applicability only to a limited group of Contractors seeking to provide services to the County, rather than having general applicability to all Contractors from whom the County solicits bids for the provision of work or services. I do not quarrel with the predicate assumption of the County that health service workers, as a group, work hard and under tough conditions. While that assumption was accepted as true *1082 for the purpose of decision, it alone does not provide, in my opinion, a rational basis for adoption of an Ordinance which only benefits a select class of employees. Presumably, all workers engaged to render services to the County do or should work hard and, while some may work under conditions "more tough" than others, that reality is incidental to the employment they have chosen and is not, in and of itself, a reason they should be better compensated for their labors.
Before reviewing the guiding principles that apply when considering concepts of due process and equal protection, we reiterate what we have previously stated concerning the presumption of validity, especially when it comes to matters dealing with economic and social legislation. "[G]reat deference" is customarily granted to a legislative body when it comes to "decisions governing the necessity and reasonableness of economic and social legislation." Caviglia v. Royal Tours of Am., 178 N.J. 460, 477, 842 A.2d 125 (2004).
The Fourteenth Amendment to the United States Constitution guarantees that no state may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Those fundamental rights also are protected under the New Jersey State Constitution. N.J. Const. art. I, ¶ 1. Although Article I, Paragraph 1 does not contain the express terms "equal protection" or "due process," the New Jersey Supreme Court has construed the expansive language of that provision as guaranteeing those fundamental constitutional rights. Greenberg v. Kimmelman, 99 N.J. 552, 568, 494 A.2d 294 (1985); see also Caviglia, supra, 178 N.J. at 471-72, 842 A.2d 125.
Under both constitutions, a statute is invalid on substantive due process grounds if it "seeks to promote [a] state interest by impermissible means," and is invalid on equal protection grounds when it does not apply "evenhandedly" to similarly situated people. Greenberg, supra, 99 N.J. at 562, 494 A.2d 294. Analyses under equal protection and due process "proceed[] along parallel lines," and "overlap" to some degree. Id. at 569.
[Caviglia, supra, 178 N.J. at 472, 842 A.2d 125.]
A state legislative enactment generally does not run afoul of federal substantive due process protections if the statute "reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory." Greenberg, supra, 99 N.J. at 563, 494 A.2d 294 (citing Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 957 (1934)). If the statute or ordinance is founded on some conceivable rational basis to promote a public purpose, it will survive constitutional scrutiny. Greenberg, supra, 99 N.J. at 563, 494 A.2d 294. A more exacting standard applies to an enactment that infringes on a fundamental right. See Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147, 178 (1973) (requiring compelling state interest); see also Moore v. City of East Cleveland, 431 U.S. 494, 499, 97 S.Ct. 1932, 1936, 52 L.Ed.2d 531, 537 (1977).
When evaluating substantive due process and equal protection challenges under our Constitution, our Court applies a balancing test. Caviglia, supra, 178 N.J. at 472, 842 A.2d 125; SojournerA. v. N.J. Dep't of Human Servs., 177 N.J. 318, 332, 828 A.2d 306 (2003); Greenberg, supra, 99 N.J. at 567, 494 A.2d 294. That test weighs the "nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the *1083 public need for the restriction." Greenberg, supra, 99 N.J. at 567, 494 A.2d 294. The Court requires that the means selected by the enacting body "bear a real and substantial relationship to a permissible legislative purpose." Taxpayers Ass'n of Weymouth Twp., Inc. v. Weymouth Twp., 80 N.J. 6, 44, 364 A.2d 1016 (1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977) (citing Nebbia, supra, 291 U.S. at 525, 54 S.Ct. at 511, 78 L.Ed. at 950); see also Katobimar Realty Co. v. Webster, 20 N.J. 114, 123, 118 A.2d 824 (1955).
The record adequately establishes that the Ordinance rationally relates to a legitimate government purpose, and is not arbitrary or discriminatory. The Ordinance, as amended, clearly delineates this purpose: to secure "that working people are paid a wage that enables them to lift their families out of poverty" and to ensure
that businesses benefiting from County funds promote the creation of jobs that pay a living wage [that] will increase the ability of Hudson County residents to attain self-sufficiency, decrease economic hardship in the County, and reduce the need for the taxpayers to fund social services to provide supplemental support for the employers of local businesses....
The County's stated intention is to increase the standard of living for contract service workers in low-wage industries, while decreasing the commensurate burden on the taxpayers of the County in caring for the uninsured through state and local health programs. Such a purpose is legitimate, and increasing the wages and benefits of covered employees rationally relates to keeping County workers out of poverty and decreasing the burden on taxpayers. Simply stated, plaintiff did not overcome the presumption of legislative validity.
Furthermore, the County did not arbitrarily enact an ordinance that applied to certain industries. At the July 10, 2003, Freeholders' meeting, Freeholder William O'Dea explicitly stated that there was a need to create "a much more stable work force," which was peculiar to the services provided by the workers covered by the ordinance. Although plaintiff's turnover rate remains between nine and eleven percent, plaintiff's Executive Director conceded that the health care industry in general has a thirty-percent rate, thus acknowledging its relative instability. O'Dea noted that in the Freeholders' "review and investigation of this particular issue of a living wage and benefits ... some of the other areas where [the County has] contracts such as construction... secretarial, computer ... we didn't see that as a problem that needed to be addressed. . . ."
Contrary to the judge's findings, the Ordinance dealt with contract workers similarly situated and did not offend equal protection by discriminating against other types of contractors dealing with the County. The Ordinance bears a real and substantial relationship to the legitimate purpose of decreasing poverty and the commensurate burden on taxpayers. The record duly confirms that the Ordinance is founded on a conceivable rational basis to promote the public good thereby passing constitutional muster. There are no facts that preclude the possibility that the County Freeholders acted in the public interest. Again, plaintiff failed to rebut the presumption that the County, in the exercise of its police power, acted upon adequate factual support.
Moreover, any administrative burden placed upon plaintiff by uncovered employees who work less than twenty hours per week is outweighed by the savings in costs of not having to cover part-time employees. *1084 Plaintiff's contention to the contrary lacks merit. We are satisfied that the County did not arbitrarily target the enumerated contractors, but rather investigated the stability and needs of certain contracting industries and enacted the Ordinance appropriately.

IMPERMISSIBLE VAGUENESS
A statute may be challenged as being either facially vague or vague "`as-applied.'" State v. Maldonado, 137 N.J. 536, 563, 645 A.2d 1165 (1994) (quoting State v. Cameron, 100 N.J. 586, 593, 498 A.2d 1217 (1985)). A statute is challenged as facially vague if it is vague in all applications. Maldonado, supra, 137 N.J. at 563, 645 A.2d 1165. A law that is challenged as vague as applied must lack sufficient clarity respecting the conduct against which it is sought to be enforced. Ibid. Vagueness implicates constitutional considerations because it creates a denial of due process because of a failure to provide adequate and fair notice or warning. Karins v. City of Atlantic City, 152 N.J. 532, 544, 706 A.2d 706 (1998). A law is void if it is so vague that persons "`of common intelligence must necessarily guess at its meaning and differ as to its application.'" Hamilton Amusement Center v. Verniero, 156 N.J. 254, 279-80, 716 A.2d 1137 (1998), cert. denied, 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999), (quoting Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983)). Furthermore, whether an ordinance is unconstitutionally vague cannot be decided in a vacuum but must be made in light of its context and with a firm understanding of its purpose. Cameron, supra, 100 N.J. at 591, 498 A.2d 1217.
In stressing the importance of context, courts have recognized that the constitutional standard for vagueness must not be mechanically applied. Ibid.; DaPurificacao v. Zoning Bd. of Adj. of Twp. of Union, 377 N.J.Super. 436, 444, 873 A.2d 582 (App.Div.2005). Accordingly, "it is well understood that not all ordinances need attain the same level of definitional clarity," nor can one expect that "an ordinance will expressly provide for all possible lawful uses." DaPurificacao, supra, 377 N.J.Super. at 444, 873 A.2d 582. Finally, economic regulations are subject to a "`less strict vagueness test'" than penal statutes because business entities can be expected to consult legislation considerations in advance of economic action. Cameron, supra, 100 N.J. at 592, 498 A.2d 1217 (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982)). "[G]reater imprecision" is tolerated in civil matters because there are lesser consequences and likelihood of misunderstanding. Cameron, supra, 100 N.J. at 592, 498 A.2d 1217.
Plaintiff asserts that the challenged provision is impermissibly vague because it provides "no guidance" to employers as to the level or scope of medical coverage they must provide to employees. Plaintiff also argues that the judge properly found that the failure to express the specific medical benefits mandated, leaves a prospective bidder with no standard to take into account when preparing a competitive bid. The County counters, claiming that it may require minimum benefits coverage in its bid specifications. It argues that the omission of such minimums provides it with the flexibility it requires, depending upon "the ever-evolving" and changing standards in the health insurance industry.
We note in passing that although the Notice to Bidders and related General Conditions and Instructions were referred to in the complaint and amended complaint as being attached, they were omitted from *1085 the appellate record. The two-dollar provision provides clarity only in situations where the cost of medical benefits coverage exceeds the two-dollar-per-hour option. However, the issue remains, whether the failure to proscribe a minimum medical coverage requirement, renders the provision impermissibly vague as applied.
At oral argument, we raised our concerns that the failure to define the minimum quality of medical benefits might influence the award of a contract by allowing the successful lowest bidder to undercut another by offering less or inadequate medical coverage. There remain, however, several reasons why we are unable to resolve these concerns on this record. Although the County correctly points to a need for flexibility in an ever changing environment of health care insurance costs and the need to define minimum health benefits coverage in bid specifications, we have no way of evaluating bid specifications that are not included in the record. Ordinarily, we would order a limited remand to review those specifications to determine what, if any, relevance they have to the issues of impermissible vagueness as framed in this appeal. However, a remand under the circumstance before us would be pointless. Based upon representations made by counsel at oral argument, the proposed language for the new 2005 ordinance currently under consideration defines medical benefits differently than the challenged provisions of the 2003 Ordinance and also removes the two-dollar-per-hour wage option. The validity of the language in the newly proposed ordinance is not before us. The change in the minimum wage law, the introduction of different language respecting health care benefits, and the inapplicability of the 2003 Ordinance to current contractors or employees render any decision on the medical benefits provision of the 2003 amended Ordinance moot.
We are mindful that the mere lack of precise parameters for the requisite medical benefits in the body of the Ordinance does not necessarily render the Ordinance sufficiently vague for us to conclude that it is impermissible. We are equally concerned with plaintiff's assertion that without an adequate description of the minimum health benefits required it is left at a disadvantage in the bidding process. In this regard, both counsel agreed, conceptually, at oral argument before us that a provision in a future ordinance requiring that minimum medical benefits be defined in bid specifications might solve the concerns each party has raised. Any decision by us respecting the issue of impermissible vagueness in the 2003 Ordinance and any judicial surgery that we might perform has been rendered moot.
Reversed.
NOTES
[1] The newly proposed living wage ordinance has not been made part of the record nor is its validity an issue in this appeal.
[2] On appeal, neither side raises the propriety of the judge's finding that a living wage runs counter to the public and competitive bidding laws. Accordingly, we do not address that issue in the body of this opinion. However, we are constrained to point out the purpose of the Local Public Contracts Laws, N.J.S.A. 4A:11-1 to -50, is not to obtain services at the lowest cost but to ensure that bidding on public contracts is fair and free from fraud, thus inviting unfettered honest competition in which bidders are placed on an equal footing. Terminal Constr. Corp. v. Atl. County Sewerage Auth., 67 N.J. 403, 410, 341 A.2d 327 (1975); In re Protest of Award of On-Line Games Prod., 279 N.J.Super. 566, 589, 653 A.2d 1145 (App.Div.1995); 426 Bloomfield Ave. Corp. v. City of Newark, 262 N.J.Super. 384, 387, 621 A.2d 59 (App.Div.1993); Entech Corp. v. City of Newark, 351 N.J.Super. 440, 457, 798 A.2d 681 (Law Div.2002). Specifications for goods or services are required to be drafted in "a manner to encourage free, open and competitive bidding" to ensure that "any standard ... or limitation" be "directly related to the purpose, function or activity for which the contract is awarded. . . ." N.J.S.A. 40A:11-13.
[3] Plaintiff, however, reserved its right to future challenges to the constitutionality of N.J.S.A. 34:11-56a4, as amended.