NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5091-15T1

KEVIN HARVARD,

    Plaintiff-Appellant.

v.

STATE OF NEW JERSEY,
JUDICIARY, ATLANTIC-
CAPE MAY VICINAGE,

    Defendant-Respondent.

---

**APPROVED FOR PUBLICATION**

**August 12, 2019**

**APPELLATE DIVISION**

---

Argued November 14, 2017 — Decided January 29, 2018

Before Judges Hoffman, Gilson and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0850-13.

Frank L. Corrado argued the cause for appellant (Barry, Corrado & Grassi, PC, attorneys; Frank L. Corrado, on the briefs).

Kimberly A. Eaton, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Gregory J. Sullivan, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

In 2000, the Assignment Judge for the Atlantic-Cape May Vicinage (the Vicinage) appointed plaintiff Kevin Harvard as a Special Civil Part Officer (SCPO). In 2010, the Vicinage began investigating plaintiff's financial records and eventually found over a dozen violations of various directives of the Administrative Office of the Courts (AOC). As a result, in July 2012, the Assignment Judge for the Vicinage terminated plaintiff's appointment in accordance with AOC Directive # 2-07, which states a SCPO's "appointment may be terminated at any time in the discretion of the Assignment Judge."

One year later, in July 2013, plaintiff filed a complaint in the Law Division alleging violations of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, and his constitutional substantive and procedural due process rights. After the parties completed discovery, the Vicinage successfully moved for summary judgment, resulting in the dismissal of plaintiff's complaint with prejudice. Plaintiff then filed this appeal, seeking reversal of the June 29, 2016 order granting summary judgment. For the following reasons, we affirm.

We review an order granting summary judgment de novo, applying the same standard used by the trial court, L.A. v. N.J. Div. of Youth & Family Servs., 217 N.J. 311, 323 (2014), which requires

denial of summary judgment if "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Townsend v. Pierre, 221 N.J. 36, 59 (2015) (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)); see also R. 4:46-2(c). Similarly, our review of legal issues is de novo. Waskevich v. Herold Law, P.A., 431 N.J. Super. 293, 297 (App. Div. 2013).

Viewed most favorably to plaintiff, the summary judgment record established the following relevant facts. In 2000, following his appointment as a SCPO, plaintiff established an office in his home. Around 2004, plaintiff hired three employees to help run his office; the Vicinage was not involved in his decision to hire these employees.

In its written opinion, the trial court succinctly described the relationship between SCPOs and their respective vicinages:

> Judiciary Human Resources is not involved in the recruitment or employment process for SCPOs. Instead, the appointment of SCPOs is by court order signed by the Assignment Judge. The court order expressly states "that this appointment may be discontinued at the discretion of the court." The consent paragraph of the appointment order expressly states that "I understand that a [SCPO] is not an employee of the New Jersey Judiciary."

SCPOs are categorized as independent contractors under AOC directives, considered to be independent contractors by Judiciary Human Resources, and their legal status is that of an independent contractor for tax and labor law purposes. SCPOs are not paid a salary. They are compensated by commissions and fees set by statute. They do not receive any of the perquisites and emoluments enjoyed by judiciary employees. By way of example, SCPOs are not members of the Public Employee Retirement System ("PERS"), are not eligible for pension benefits, do not receive health or life insurance coverage benefits, and are not subject to minimum wage and hour requirements. SCPOs do not receive any paid vacation or sick leave. The judiciary does not make any employer-based social security contributions on behalf of SCPOs. SCPOs receive a Form 1099, not a W-2 form . . . .

SCPOs are purely at-will appointees that serve at the pleasure of the [V]icinage Assignment Judge. They are not appointed for a statutory term of office or a defined contractual period, and have no tenure rights or civil service rights. SCPOs are not appointed annually or for any other time period. They serve until their appointment is discontinued.

SCPOs work independently, at their own pace, and provide their own equipment, offices, vehicles and insurance. SCPOs can hire their own employees without vicinage approval unless the employee would assist in serving process. Bank accounts utilized by SCPOs are in their name, not in the name of the judiciary.

SCPOs serve various court documents, including landlord/tenant summonses, complaints, and warrants of removal, for which they receive statutory fees. SCPOs also conduct physical

4

lock-outs of tenants under warrants of removal, for which they receive direct payment from the landlords. They also serve wage executions on employers, levies on banks, and related turnover orders, for which they receive statutory commissions.

SCPOs must designate an accountant to audit their financial records on an annual basis. AOC Directive # 4-03. The Trial Court Administrator and Vicinage Finance Manager must review and approve this designation. Ibid. "Annually, at the end of the State fiscal year (July 1 - June 30), but before November 1," SCPOs must escheat any unclaimed checks to the State. AOC Directive # 3-03.

Plaintiff designated Robin Shields, CPA, to audit his financial records. From 2006 through 2009, Shields annually noted that plaintiff "has outstanding checks on his books that should be written off his books as uncleared (not presented for payment), the amounts and details of which are to be available for ten years from the date written. The matching funds should be paid to the State for escheatment." In 2007, the Trial Court Administrator reviewed Shields' audit report and informed plaintiff he should have escheated the uncleared checks noted in Shields' 2006 audit.

Shields' 2010 report stated plaintiff was depositing funds "four to six weeks after they appear[ed] on the cash receipts journal. This is not in accordance with the regulations." AOC

Directive # 4-03 required weekly deposits.  In an addendum report, Shields again noted that plaintiff failed to escheat many unclaimed checks "as required."

On December 13, 2010, plaintiff sent the Vicinage a letter in response to Shields' 2010 report.  He wrote, "The date I assign[ed] to the posted funds is a reference identifier that my system uses to sort and reference the posted funds.  That date has little bearing on the calendar date the funds are presented at the bank."  He assured the Vicinage that "[a]ll funds are deposited weekly as required by the rules regarding same.  I have used this procedure successfully and without incident for the past eleven years and eleven months."

At the same time Shields sent her report to the Vicinage, she sent another copy to the AOC's Internal Audit Unit (IAU).  After reviewing the report, the IAU began an investigation to assess plaintiff's compliance with AOC directives.  The IAU initially found five problems with plaintiff's financial practices: 1) plaintiff was depositing funds more than a week after they appeared in his cash receipts journal;  2) plaintiff's records stated he collected $125,600 in June, but he deposited $127,000;  3) plaintiff was not annually escheating unclaimed checks;  4) plaintiff was not disbursing his funds on a monthly basis, as

required under AOC Directive # 4-03[1]; and 5) plaintiff had $134,000 in outstanding checks but $130,000 in the checking account. At some point after receiving Shields' report, the IAU met with Shields. The meeting confirmed the IAU's concerns regarding plaintiff's financial records.

Around January 2011, the Vicinage learned the State had a tax judgment against plaintiff for $5,904.96. AOC Directive # 2-07, states that a potential SCPO "must not have any outstanding judgments against him [or] her." According to plaintiff, he paid the judgment the same day he received it.

In February 2011, the IAU met with plaintiff. Plaintiff claimed his accounting software prevented him from posting multiple checks from the same person on the same day, so he occasionally had to backdate checks to enter them into the software. The IAU knew other SCPOs who used plaintiff's software without similar problems, but plaintiff said he had not purchased software updates, as they had done.

The Vicinage consequently asked plaintiff for a working copy of his software. "[U]nder protest but in an attempt to cooperate," plaintiff claims he "provided his computer [software] to the

---

[1] The IAU suspected plaintiff had numerous checks outstanding from prior months because he was backdating them to appear to comply with AOC directives.

Vicinage for review." By this point, however, plaintiff claims he had already hired a programmer to fix his computer program. When asked at his deposition whether he produced "anything to the Vicinage indicating that" past improper postings "was due to a glitch" in his computer, plaintiff replied, "No."

On October 18, 2011, the IAU issued a report assessing plaintiff's financial records, listing thirteen "issues of non-compliance" with AOC directives. The report included a finding that plaintiff had failed to maintain required records of trust fund activity and had failed to escheat funds to the State, in violation of other directives.

On October 20, 2011, Shields issued her 2011 report, which supported the IAU's findings. On December 7, 2011, plaintiff sent the Vicinage a letter attacking Shields' 2011 report, describing it as "full of material errors" and "overall unreliable." He added, "This audit report does not reflect the activities of my financial records during the period under review."

On July 30, 2012, the Assignment Judge notified plaintiff by letter that his "service as a [SPCO] is discontinued." The judge later explained that the "key basis" for his decision was findings contained in the October 18, 2011 letter from the IAU, and the "lack of any additional justification" or "explanation" regarding these findings.

In addition to asserting claims of CEPA, CRA, and due process violations, plaintiff's complaint also alleged that the Vicinage had acted arbitrarily and capriciously under the common law, in depriving him of his continued appointment and his entitlement to commissions earned. Plaintiff alleged he "was the only African-American [SCPO] in the [V]icinage," claiming he received differential treatment "because of that."

After hearing oral argument, the motion judge entered the order under review, setting forth his reasons in a comprehensive fifty-page written decision. The judge addressed each of plaintiff's claims in detail and explained why each claim lacked merit.

First, the judge determined that plaintiff was not an "employee" for CEPA purposes. The judge reasoned the majority of the factors in the Pukowsky[2] test weighed in favor of classifying plaintiff as an independent contractor and not an employee because: he was hired as an independent contractor, he did not receive a salary or benefits, he was taxed as an independent contractor, he controlled his own schedule and work subject only to accounting and financial reporting requirements imposed by AOC Directives,

---

[2]  Pukowsky v. Caruso, 312 N.J. Super. 171, 182-83 (App. Div. 1998).

he selected his own accountant for his annual financial report; the SCPO position was at will serving at the pleasure of the Assignment Judge; SCPO services were not integral to the business of the Vicinage; and the SCPO position involved specialized skills not possessed by Vicinage employees.

Second, the judge concluded plaintiff did not engage in actionable whistle-blowing under CEPA. He reasoned that plaintiff's complaints to the Vicinage, and the practices of the Vicinage and the AOC, did not concern the health, safety, or welfare of the public and did not report a public harm. The judge also concluded plaintiff's complaints to the Vicinage concerned a private disagreement over his accounting practices, commissions, and reputation.

Third, the judge determined that the Vicinage does not constitute a "person" amenable to suit under the CRA. The judge completed an analysis using the three Fitchik[3] factors. Under factor one, the judge found that any judgment in favor of plaintiff would be paid out of State revenue. The judge reasoned the second Fitchik factor weighed in favor of classifying the Vicinage as a State entity because the State funds, administers, and operates

---

[3] Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (en banc).

it. The judge found that the third <u>Fitchik</u> factor favored classifying the Vicinage as an arm of the State because the Vicinage has little to no autonomy outside of the authority the State has granted it, and the AOC is a State entity managed by the Chief Justice and the Acting Administrative Director.

Fourth, the judge concluded plaintiff failed to establish due process claims under Article I, paragraph 1 of the New Jersey Constitution. Regarding his substantive due process claim, the judge reasoned plaintiff had no entitlement to continued employment, and no precedent recognized substantive due process protection for one's good reputation. The judge also observed that <u>Rule</u> 6:12-3(b) called for another SCPO to proceed with the execution of all writs that had been delivered to a prior SCPO who is no longer able to act.

Finally, the judge determined that plaintiff's allegation that the Vicinage arbitrarily deprived him of his protected liberty interest in continued employment free of injury to his reputation was time-barred. The judge reasoned that to the extent plaintiff relied on the prerogative writ of certiorari, the forty-five day limitation under <u>Rule</u> 4:69-6(a) barred his claim.

On appeal, plaintiff presents five arguments: 1) the trial court erroneously found that plaintiff was not a Vicinage employee under CEPA; 2) the trial court erroneously found that plaintiff

did not engage in whistle-blowing activity; 3) the Vicinage is a person subject to suit under the CRA; 4) plaintiff has stated a claim that the Vicinage violated his State constitutional substantive and procedural due process rights; and 5) plaintiff has stated a timely common law claim of arbitrary treatment under the fundamental fairness doctrine.

We have considered each of plaintiff's arguments in light of our review of the record and applicable principles of law. We discern no basis to disturb the order granting summary judgment. We therefore affirm, substantially for the reasons set forth by the motion judge in his thorough and well-reasoned written decision. We add the following comments.

Even if we were to accept plaintiff's argument that the motion record precluded a finding that, as a matter of law, plaintiff was not a Vicinage employee for CEPA purposes, the record clearly demonstrates that plaintiff failed to establish a whistle-blower claim under CEPA. See Turner v. Associated Humane Soc'ys, Inc., 396 N.J. Super. 582, 594 (App. Div. 2007) (holding that a complaint that "deals with the employee's personal harm, not harm to the public" is not viable under CEPA). The record lacks any credible evidence of harm to the public.

Regarding plaintiff's due process claim, the Fourteenth Amendment to the United States Constitution and Article I,

paragraph 1 of the New Jersey Constitution protects individuals from deprivations of life, liberty, and property, without due process of law. See Doe v. Poritz, 142 N.J. 1, 99 (1995). The essence of procedural due process is notice and an opportunity to be heard. See State v. Garthe, 145 N.J. 1, 8 (1996). There are no bright-line rules to judge the constitutionality of a particular procedure employed in a proceeding; "[i]t is a flexible concept and calls for such procedural protections as the particular situation demands." N.J. Div. of Youth & Family Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2003).

Substantive due process "protects individuals from the 'arbitrary exercise of the powers of government' and 'governmental power [. . .] being used for [the] purposes of oppression.'" Filqueiras v. Newark Pub. Schs., 426 N.J. Super. 449, 469 (App. Div. 2012) (quoting Felicioni v. Admin. Office of the Courts, 404 N.J. Super. 382, 392 (App. Div. 2008) (alteration in original)). Substantive due process, however, "is reserved for the most egregious governmental abuses against liberty or property rights, abuses that 'shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity.'" Ibid. (alteration in original) (quoting Felicioni, 404 N.J. Super. at 469). When determining the extent of this protection, New Jersey courts must weigh the "nature of

the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Visiting Homemaker Serv. of Hudson Cty. v. Bd. of Chosen Freeholders, 380 N.J. Super. 596, 610 (App. Div. 2005) (quoting Greenberg v. Kimmelman, 99 N.J. 552, 567 (1985)).

"[A]n employee hired at will has no protected interest in his employment and may not prevail on a claim that his or her discharge constituted a violation of property rights." Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 355 (App. Div. 1993). An at-will employee's termination may, however, implicate a liberty interest when the termination may result in disqualification from future public appointment. Ibid.

Depending on the context, New Jersey's doctrine of fundamental fairness augments "existing constitutional protections" or exists "as an independent source of protection against state action." Doe, 142 N.J. at 108 (quoting State v. Ramseur, 106 N.J. 123, 377 (1987) (Handler, J., dissenting)). It "serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily." Ibid. "Fundamental fairness is a doctrine to be sparingly applied. It is appropriately applied in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious

14                                                    A-5091-15T1

deprivation." Ibid. (quoting State v. Yoskowitz, 116 N.J. 679, 712 (1989) (Garibaldi, J., concurring and dissenting)).

In support of his claim that the Vicinage violated his procedural due process rights by terminating his appointment, plaintiff argues he "demonstrated a state-protected 'entitlement' to unpaid future commissions on writs he served before he was terminated, and he has further established that [the] Vicinage has deprived him of that entitlement without offering him any process whatsoever." We disagree.

Plaintiff overlooks Rule 6:12-3(b), which requires the court to reassign cases to another SCPO in place of a SCPO who, "for any . . . reason is unable to act." R. 6:12-3(b). The replacement SCPOs shall "proceed with and complete the execution of all writs" previously delivered to the replaced officer. Ibid. The replacement SCPOs are entitled to the commissions from their work, not the replaced officer. See N.J.S.A. 22A:2-37.2.

Given the Vicinage's extensive investigation of plaintiff's conduct, and the numerous chances it offered him to explain it, the Vicinage provided plaintiff due process, and that process only served to confirm his significant non-compliance with AOC directives. Plaintiff's contention that he never received "an opportunity to explain himself or rebut the charges against him" is a bald assertion, unsupported by the record.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5091-15T1