**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1374-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY CRANCE,

    Defendant,

and

DELAWARE RIVER TUBING, INC.,

    Defendant-Appellant.

_____

Argued April 6, 2022 – Decided June 23, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket Nos. 1016-PKS-2019-52031, 1016-PKS-2019-52033, 1016-PKS-2019-52034, 1016-PKS-2019-52035, 1016-PKS-2019-1016-PKS-2019-52036, 1016-PKS-2019-52037, 1016-PKS-2019-52038, 1016-PKS-2019-56891, 1016-PKS-2019-56894, 1016-PKS-2019-56895, 1016-PKS-2019-1016-PKS-2019-56896, 1016-PKS-2019-56897, 1016-PKS-

2019-56898, 1016-PKS-2019-56899, 1016-PKS-2019-56900, 1016-PKS-2019-56901, 1016-PKS-2019-56902, 1016-PKS-2019-56903, 1016-PKS-2019-56907, 1016-PKS-2019-56908, 1016-PKS-2019-56919, 1016-PKS-2019-56927, 1016-PKS-2019-57036, 1016-PKS-2019-57037, and 1016-PKS-2019-57039.

Gaetano M. De Sapio argued the cause for appellant.

Candice McLaughlin, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Candice McLaughlin, on the brief).

PER CURIAM

Defendant Delaware River Tubing, Inc. (DR Tubing) appeals from a January 25, 2021 order finding the company guilty of twenty-five violations of N.J.A.C. 7:2-2.5, for operating a commercial enterprise on State parklands without a permit. The order penalized DR Tubing $800 for each violation for total penalties of $20,000. We affirm because the fines were authorized by statute, the court's findings were supported by substantial credible evidence, and the amounts imposed were within the court's discretion.

I.

DR Tubing is a corporation that rents and sells tubes for recreational use. Its primary business is located several miles from the Delaware and Raritan

2

Canal State Park (the Park) and the Delaware River. During the summer rental season, customers park in the company's parking lot and rent tubes. DR Tubing then transports its customers by shuttle buses, which park in the Park or on land adjacent to the Park. Customers and employees of DR Tubing then walk to river access points located in the Park. After the customers finish tubing, the company's buses pick them up about six and a half miles downstream at another Park location.

The Park is managed by the State Park Service (the Service), which is part of the Department of Environmental Protection (the DEP). Through the Service, the DEP manages State parks and the public's access to those Parks. See N.J.A.C. 7:7-2.2. The Legislature has declared that developing and managing State parks and forests, as well as providing recreational programs to the public, is in the best interests of the citizens of the State. N.J.S.A. 13:1L-2. The DEP is authorized to grant persons or companies the right to operate for private profit in State parks when the Department finds it "necessary and proper" to further the public's use and enjoyment of State lands. N.J.S.A. 13:1L-6. Accordingly, the DEP's regulations prohibit commercial enterprises from using State parks without a permit, contract, or lease from the State. N.J.A.C. 7:2-2.5.

A-1374-20

In 2013, DR Tubing entered a publicly bid Concession Agreement with the DEP. The Agreement gave DR Tubing the exclusive right to rent tubes for recreational floating down the Delaware River from designated entry and exit points in the Park. The Agreement also permitted DR Tubing to use designated parking spots for its buses and to install seasonal stairs at river-access points. DR Tubing was also required to pay concession fees to the DEP based on its annual number of tubing customers.

DR Tubing operated under the terms of the Concession Agreement, which was renewed annually, from 2013 to 2018. The DEP, however, declined to renew the Agreement for 2019, contending that DR Tubing had not paid the required fees for previous years. The State contends that DR Tubing failed to pay $43,000 in concession fees in 2016 and 2017. Accordingly, the DEP did not extend DR Tubing's Concession Agreement for the summer of 2019. Instead, DEP advised DR Tubing in writing that it could not operate on State property.

Even though it did not have a Concession Agreement with DEP, DR Tubing transported hundreds of customers each day into the Park from May to September of 2019. In response, the State Park Police issued thirty-eight complaint-summonses for unauthorized commercial activity in the Park in

4

violation of N.J.A.C. 7:2-2.5. Those complaints originally named as defendant Gregory Crance, the president of DR Tubing. The court later added DR Tubing as a defendant on the DEP's motion.

Initially, the complaints were filed in the Kingwood Township Municipal Court. Thereafter, an order was issued transferring venue from the Municipal Court to the Superior Court. See N.J.S.A. 2A:58-11; N.J.S.A. 13:1L-23(d) (allowing DEP to pursue civil penalties in either Municipal Courts or the Superior Court).

A four-day bench trial was conducted in November 2020. At trial, the State elected to proceed on thirty-four of the complaints. The court heard testimony from five witnesses: three State Park police officers, the Assistant Director of the Division of Parks and Forestry, and Gregory Crance. The DEP also submitted evidence, including the Concession Agreement and several videos showing the scope of DR Tubing's activities in the Park in 2019.

The trial court announced its decision on the record on December 15, 2020 and made detailed findings of facts and conclusions of law. The court found that before 2019, DR Tubing had engaged in a commercial enterprise on State lands in accordance with the Concession Agreement. The court also found that in 2019, DR Tubing continued to engage in commercial activities for profit on

property in a State park without a concession agreement. The court found DR Tubing parked its buses in the Park and on State property; DR Tubing's employees assisted customers with carrying tubes or guiding customers over State property to the Delaware River; tubes were piled on the towpath in the State Park; and tubes and employees of DR Tubing were often on State property.

Based on those factual findings, the trial court concluded that DR Tubing had violated N.J.A.C. 7:2-2.5 on twenty-five occasions. The court dismissed nine of the summonses. The court also dismissed all the summonses against Crance. The court then imposed penalties. Those rulings were embodied in an amended order issued on January 13, 2021. DR Tubing now appeals from that order.

## II.

On appeal, DR Tubing makes seven arguments contending, (1) it was not a violation of law or regulations for it to provide its customers with transportation to a State park so that the customers could access and use the Park; (2) the Delaware River is a navigable waterway and the State cannot penalize DR Tubing for transporting its customers to use that waterway; (3) the right of access to the Delaware River is guaranteed by the Public Trust Doctrine; (4) sustaining the civil penalties would sanction the State's violation of its

6

obligation to facilitate access to the Delaware River; (5) the trial court erred by considering and giving undue weight to the 2013 Concession Agreement; (6) the court erred by allowing the State to amend the summonses to name DR Tubing as a defendant; and (7) the State imposed administrative penalties without an administrative hearing.

The scope of appellate review of a judge's verdict following a bench trial is limited. Factual findings will be upheld on appeal when they are supported by substantial credible evidence. Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011). Moreover, we are obliged to "'give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "We do not disturb the findings of fact and conclusions of law of the trial court unless those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" H.V.D.M. v. R.W., 466 N.J. Super. 227, 238 (App. Div. 2021) (quoting Rova Farms Resort Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

DR Tubing's seven arguments can be appropriately analyzed in five questions: (1) is the DEP authorized to require a commercial business to have a permit to use a State park; (2) was DR Tubing operating a commercial enterprise in a State park in 2019; (3) does the Public Trust Doctrine or the status of the Delaware River as a navigable waterway prevent the DEP from regulating DR Tubing's commercial operations; (4) did the trial court err in allowing DR Tubing to be named as a defendant; and (5) were the penalties imposed lawfully?

A.    The Authority of DEP.

The DEP is authorized to promulgate regulations regarding reasonable use of State property. N.J.S.A. 13:1L-19. The Legislature has expressly granted the DEP authority to enter concession agreements for the public's benefit:

> The Department shall have the authority to grant such rights or privileges to individuals or corporations for the construction, operation and maintenance for private profit of any facility, utility or device upon the State parks . . . as the Department shall find necessary and proper for the use and enjoyment of the lands by the public. Such rights and privileges shall include, but not be limited to, concessions, franchises, licenses, permits and other rights and privileges deemed by the Department to be appropriate in the utilization of the lands for the public's benefit.
>
> [N.J.S.A. 13:1L-6(a).]

A-1374-20

The DEP, in turn, has issued regulations directing that "[a] person shall not engage in a commercial enterprise or activity on lands and waters under the jurisdiction of the State Park Service without a permit issued by the State Park Service or pursuant to a contract or lease entered into with the Department." N.J.A.C. 7:2-2.5. That regulation was validly issued in 2014. Our review of agency regulations "begins with a presumption that the regulations are both 'valid and reasonable.'" Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 111 (App. Div. 2014) (quoting N.J. Ass'n of School Adm'rs v. Schundler, 211 N.J. 535, 548 (2012)).

B. DR Tubing Commercial Enterprise.

The trial court found that DR Tubing had operated a commercial enterprise on the Park by renting tubes to customers and then transporting the customers to the Park. The court found that DR Tubing's "fleet of twelve buses" had pulled onto State Park property daily "for the sole purpose of dropping off and picking up" hundreds of customers. The court also found that DR Tubing employees had escorted customers with their tubes to the river-access areas and later picked up those customers after they had finished tubing down the river. Those factual findings are supported by substantial credible evidence. Those

facts also establish that DR Tubing operated a commercial enterprise on Park lands.

DR Tubing contends that N.J.A.C. 7:2-2.5 is vague and overly broad because there was no permit available for what DR Tubing was doing with its customers in 2019. We reject that argument as not supported by the law or the facts found by the trial court.

"A law is void if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Visiting Homemaker Serv. of Hudson Cnty. v. Bd. of Chosen Freeholders of Cnty. of Hudson, 380 N.J. Super. 596, 613 (App. Div. 2005) (quoting Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80 (1998)). Accordingly, for the regulation to be unconstitutionally vague as applied to DR Tubing, it "must not clearly prohibit the conduct on which the particular charges were based." State v. Dalal, 467 N.J. Super. 261, 283 (App. Div. 2021) (quoting State v. Saunders, 302 N.J. Super. 509, 521 (App. Div. 1997)).

N.J.A.C. 7:2-2.5, however, is clear: a person needs permission to operate a commercial enterprise in a State park. The trial court confirmed the common understanding of the term "commercial enterprise" by referring to Black's Law Dictionary. That dictionary defined "business" as "[a] commercial enterprise

A-1374-20

carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." Black's Law Dictionary 192 (7th ed. 1999). Indeed, this is in line with how "business" is defined by multiple dictionaries. See Business, Merriam-Webster, https://www.merriam-webster.com/dictionary/business (last visited June 5, 2022) ("[A] commercial or sometimes an industrial enterprise . . . ."); Webster's II New College Dictionary 149 (1st ed. 1995) ("A commercial enterprise or establishment.").

Before 2019, DR Tubing had a Concession Agreement with the DEP that allowed it to operate. The trial court also found that DR Tubing's activities in 2019 were the same as its activities from 2013 to 2018. Consequently, DR Tubing understood it was operating a commercial enterprise in the Park. The Service had a right not to renew that agreement when DR Tubing failed to pay all the concession fees. Accordingly, we hold that N.J.A.C. 7:2-2.5 is not unconstitutionally vague.

We also reject DR Tubing's contention that the trial court inappropriately considered the Concession Agreement. The Agreement was relevant, and it was appropriate for the trial court to consider the Concession Agreement because DR Tubing operated under that Agreement from 2013 to 2018. The Concession

11

Agreement was, therefore, relevant, and its probative value was not substantially outweighed by its potential to cause undue prejudice.  See N.J.R.E. 403.

C.    The Public Trust Doctrine.

Under the Public Trust Doctrine, the shores and the navigable waterways of New Jersey are open to public use and access by "all on equal terms." Matthews v. Bay Head Improvement Ass'n, 95 N.J. 306, 322 (1984) (quoting Borough of Neptune City v. Borough of Avon-by-the-Sea, 61 N.J. 296, 309 (1972)).  The doctrine extends to "recreational uses," including the right of the public to access and use the ocean and navigable waters.  Borough of Neptune City, 61 N.J. at 309; see also Arnold v. Mundy, 6 N.J.L. 1 (1821).

The State concedes that the Public Trust Doctrine applies to access to the Delaware River.  The State also concedes that the Delaware River is a navigable waterway to which the public has a right of access.  The public right of access, however, can be reasonably restricted.  See Matthews, 95 N.J. at 323-24.  The State has the right to impose reasonable regulations concerning access to public trust areas.  For example, it has long been recognized that the State or municipalities can charge beach-access fees provided that those fees are reasonable and related to the cost of maintaining lands or wet water areas under the public trust doctrine.  Raleigh Ave. Beach Ass'n v. Atlantis Beach Club, Inc.,

185 N.J. 40, 42 (2005). A "municipality, in the exercise of its police power and in the interest of the public health and safety, would have the right to adopt reasonable regulations as to the use and enjoyment of [a] beach area." Van Ness v. Borough of Deal, 78 N.J. 174, 179 (1978). Accordingly, the State has the authority to adopt reasonable regulations governing the use and enjoyment of lands leading to navigable waters. Ibid.; see also Borough of Neptune City, 61 N.J. at 306.

The Legislature authorized the DEP to regulate lands and waters under its jurisdiction to ensure that commercial entities have concession agreements to conduct commercial activities on State park lands. See N.J.S.A. 13:1L-6(a); N.J.S.A. 13:1L-2; N.J.S.A. 13:1L-19. Consequently, the State is not barring access to the Delaware River by requiring a concession agreement. Instead, it is exercising the authority delegated to it by the Legislature to ensure that commercial entities operate in a way that does not restrict the right of access of the public. In short, the public has reasonable access to the Delaware River, and commercial businesses can facilitate that reasonable access so long as they have a concession agreement.

The trial court noted that the DEP did not issue tickets to DR Tubing customers or other members of the public who had entered the Park to use the

river.  Indeed, nothing in the trial court's decision suggests that the company was being penalized for accessing or using the Delaware River.  Instead, penalties were imposed on DR Tubing for violating DEP regulations because the company was conducting a commercial enterprise on Park lands without permission or an agreement with the State.

D.      Adding DR Tubing as a Defendant.

The trial court properly permitted the summonses to be amended to add DR Tubing as a defendant.  Court rules permit amending a summons to remedy technical defects, even after a trial has started.  R. 7:2-5; R. 7:14-2.  DEP appropriately moved to amend the complaint-summonses to add DR Tubing at the first appearance in Municipal Court.  Those amendments gave DR Tubing sufficient notice of the charges against it and a full opportunity to defend itself at trial.

E.      The Civil Penalties.

The Legislature has provided that violation of State Park Service regulations can result in a civil penalty in an amount from $50 to $1,500.  See N.J.S.A. 13:1L-23(d).  DR Tubing was found to have committed twenty-five violations of N.J.A.C. 7:2-2.5.  The trial court exercised its discretion and

assessed a civil penalty of $800 per violation. Those penalties were within the statutory range. We discern no error in the imposition of those penalties.

DR Tubing argues that a plenary hearing was required to review the civil administrative penalties imposed. In making that argument, DR Tubing misconstrues the difference between a civil action and an administrative action under the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -31. Because the summonses against DR Tubing were pursued as civil penalties in court, they are not subject to the Administrative Procedure Act.

In summary, we affirm the trial court's order finding DR Tubing guilty of twenty-five violations of N.J.A.C. 7:2-2.5 and the court's imposition of an $800 penalty for each violation. To the extent that we have not addressed certain arguments raised by DR Tubing, we hold that those arguments lacked sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1374-20