# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0024-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL J. BALBOSA,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

**April 25, 2025**

APPELLATE DIVISION

Argued November 7, 2024 – Decided April 25, 2025

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-12-1603.

Steven E. Braun, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Steven E. Braun, on the brief).

Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

    The opinion of the court was delivered by

NATALI, J.A.D.

Defendant Michael J. Balbosa appeals from a July 10, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. He pled guilty to one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(a)(iii), based upon his possession of two videos depicting a scantily-dressed child engaging in provocative sexual acts.

Rather than challenge his conviction on direct appeal, defendant filed a timely pro se petition to vacate his plea. In addition to arguments that his counsel was constitutionally ineffective for failing to file either a motion to suppress or dismiss, and that the State's investigation and subsequent prosecution ran afoul of the Ex Post Facto Clauses of the United States and New Jersey Constitutions, he also contended subsections (a), (b), and (c) of N.J.S.A. 2C:24-4(b)(1) violated the First Amendment to the United States Constitution.

After the PCR court denied defendant's petition, our Supreme Court issued a decision in which it concluded subsection (c) was unconstitutionally overbroad. State v. Higginbotham, 257 N.J. 260, 266 (2024). In considering defendant's arguments, we also address whether subsections (a) and (b) are either overbroad or vague in violation of the First Amendment.

We have reviewed the relevant legal principles and reject defendant's arguments. First, we find defendant's counsel was not constitutionally

A-0024-23

ineffective under <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), because: (i) defendant's conduct satisfies the pre-amendment definition to N.J.S.A. 2C:24-4(b)(1); (ii) any motion to suppress would have failed because he was charged and pled guilty to conduct he engaged in after the amendment to N.J.S.A. 2C:24-4(b)(1) came into effect; (iii) subsections (a) and (b) do not violate the First Amendment; and (iv) it would not have been rational for defendant to reject the State's plea offer.

Second, we conclude subsections (a) and (b) criminalize the possession and distribution of child pornography and are neither overbroad nor vague. To the extent the conclusion we reach is contrary to our prior decision in <u>State v. Higginbotham</u>, 475 N.J. Super. 205 (App. Div. 2023), <u>aff'd in part</u>, <u>rev'd in part</u>, 257 N.J. 260 (2024), we expressly reject it. Lastly, we are convinced the State's investigation and subsequent prosecution of defendant did not violate the Ex Post Facto Clauses of the United States and New Jersey Constitutions. We therefore affirm the PCR court's decision.

I.

The State began its investigation into defendant on February 9, 2017, when Detective Tiffany Lenart of the Monmouth County Prosecutor's Office "used Torrential Downpour to successfully download two videos of suspected

3 <span style="float:right">A-0024-23</span>

child pornography from a computer" associated with defendant's IP address.[1]

After reviewing the videos, Detective Lenart concluded they contained depictions of "child erotica." The two videos (V1 and V2), each roughly fifteen minutes long, depict the same "approximately [ten- to twelve-year-old] girl." In her investigation report, Detective Lenart described the contents of the videos as follows:

> [V1]: This 15:06-long video depicts an approximately [ten- to twelve-year-old] girl wearing a sheer white nightgown dancing around on a bed in a sexually suggestive manner with a rainbow[-]colored blanket. [Detective Lenart] estimated this girl's age by her small stature, youthful appearance, and lack of breast development.

> [V2]: This 14:42-long video depicts an approximately [ten- to twelve-year-old] girl wearing black lingerie to include a bra, underwear, garter, and stockings. She is seen dancing in a sexually suggestive manner. [Detective Lenart] estimated this girl's age by her small stature, youthful appearance, and lack of breast development. It should be noted that this is the same girl featured in [V1].

---

[1]  According to Detective Lenart, Torrential Downpour "is a computer program that facilitates the searching of the BitTorrent P2P protocol for images and videos depicting child sexual abuse and also assists in their download. Torrential Downpour is only available to trained and licensed law enforcement officers."

Several days later, using a publicly available geolocation service, Detective Lenart determined the IP address geolocated to Asbury Park. After forwarding a subpoena to the relevant internet service provider, it reported the IP address was assigned to the account of one of defendant's brothers, who lived with defendant at the same address.

N.J.S.A. 2C:24-4 was amended, effective February 1, 2018. L. 2017, c. 141; see also Higginbotham, 257 N.J. at 278-79. Prior to the enactment of the amendment, the statute defined "'an item depicting the sexual exploitation or abuse of a child' . . . only as an image that 'depicts a child engaging in a prohibited sexual act or in the simulation of such an act.'" Higginbotham, 257 N.J. at 278 (citing N.J.S.A. 2C:24-4(b)(1)). The Legislature, however, "expanded the definition . . . to include an image that 'portrays a child in a sexually suggestive manner.'" Id. at 279; see also N.J.S.A. 2C:24-4(b)(1)(b). The amended statute defined "portrays a child in a sexually suggestive manner" as:

> (a) to depict a child's less than completely and opaquely covered intimate parts, as defined in N.J.S.A. 2C:14-1, in a manner that, by means of the posing, composition, format, or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the child; or

A-0024-23

(b) to depict any form of contact with a child's intimate parts, as defined in N.J.S.A. 2C:14-1, in a manner that, by means of the posing, composition, format, or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the child; or

(c) to otherwise depict a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where the depiction does not have serious literary, artistic, political, or scientific value.

[N.J.S.A. 2C:24-4(b)(1) (citations reformatted).]

On February 8, 2018, Detective Lenart once again used Torrential Downpour to download the two videos of "suspected child pornography" from a computer associated with defendant's IP address. After forwarding a subpoena to a different internet service provider, Optimum Online informed Detective Lenart the IP address was assigned to the account of defendant's mother. Relying on the information produced by her investigation, Detective Lenart applied for a search warrant of defendant's home, which the court granted.

A few days later, law enforcement officials executed the search warrant and discovered "evidence of distribution and possession of child pornography . . . belonging to [defendant]." Defendant was arrested for alleged violations of N.J.S.A. 2C:24-4(b)(5)(a)(iii) and N.J.S.A. 2C:24-4(b)(5)(b)(ii).

A-0024-23

A grand jury indicted defendant with second-degree endangering the welfare of a child (possession of child pornography), N.J.S.A. 2C:24-4(b)(5)(b)(ii) (count one), and second-degree endangering the welfare of a child (distribution of child pornography), N.J.S.A. 2C:24-4(b)(5)(a)(i) and/or N.J.S.A. 2C:24-4(b)(5)(a)(iii) (count two). The dates of the offenses listed in the indictment are June 29 and February 8, 2018, respectively. Both counts describe the materials possessed and distributed by defendant as "child pornography," defined as items "depicting the sexual exploitation or abuse of a child."

Defendant initially agreed to plead guilty to count one. With the State's consent, however, he entered a supplemental plea because neither the State nor defendant's counsel were aware that charge "would require parole supervision for life." As such, defendant and the State agreed "[he] would withdraw that prior plea and . . . enter a new plea under the same indictment to [c]ount [two] of the indictment." That is, defendant agreed to "admit[] his guilt to maintaining an item depicting the sexual exploitation or abuse of a child in a file sharing program making that file available to others." In response to the court's questioning, defendant confirmed he reviewed the plea agreement with his attorney, understood it, and was satisfied with his counsel's representation.

<span>A-0024-23</span>

Defendant thereafter provided a factual basis in which he admitted that on February 8, 2018, he was in possession of a computer with "an internal file sharing program[,] which was designated as available for searching by or copying to one or more other computers," and on that computer were "less than [twenty-five] items depicting the sexual exploitation or abuse of a child." He further admitted on that file sharing program he possessed two videos that were both made available to others and downloaded by Detective Lenart. Satisfied with the factual basis for his guilty plea, the court accepted the plea agreement and sentenced defendant to a five-year custodial term.

Defendant filed a timely pro se PCR petition contending the amendments to N.J.S.A. 2C:24-4 violated the First Amendment. After counsel was appointed, defendant filed a supplemental brief raising three arguments. First, defendant contended his counsel was "legally ineffective in violation of the United States Constitution," because he

> failed to properly represent him, failed to explain the discovery or review the discovery with him[,] or otherwise failed to review the alleged erotic images subject of the [i]ndictment. Because counsel never viewed the material[,] no discussion was conducted as to a potential defense. No motion was made to challenge the warrant used to search his internet address and no motion was made to challenge the constitutionality of the statute[,] which was amended after the investigation had begun in 2017.

Second, defendant asserted the amended statute was "overbroad as applied to [him] and violative of his rights under the Fifth Amendment to the United States Constitution and New Jersey Constitution." He further contended the amended statute was "vague facially and as applied, and that on closer analysis is overbroad . . . in violation of . . . defendant's basic First, Fifth[,] and Fourteenth Amendment rights."

In his third and final argument, defendant claimed "the indictment . . . should have been challenged as an ex-post facto law[,] as the new law was invalid" as applied to him. In support, defendant noted the State's investigation began in February 2017 but "[t]he affidavit submitted to the court for the search warrant . . . [was] dated June 26, 2018." That timeline proved "the investigator[,] aware of the potential changes to the law[,] waited for the [a]mendment to pass before seeking a warrant to seize the alleged 'erotic' images and arrest . . . defendant." At the PCR hearing, defendant's counsel reasserted defendant's arguments and added our decision in Higginbotham, 475 N.J. Super. at 214, in which we held subsections (a), (b), and (c) of the amended statute were "unconstitutionally vague and overbroad," controlled.

The State opposed defendant's petition and argued the charges did not fall within the Higginbotham decision because the videos defendant possessed fell

9

within the pre-amendment definition of "items depicting the sexual exploitation or abuse of a child" contained in N.J.S.A. 2C:24-4(b)(1)(a). That is, while our court's decision in <u>Higginbotham</u> focused on the "sexually suggestive manner" definition, <u>see</u> N.J.S.A. 2C:24-4(b)(1), the pre-amendment definition of an item depicting the sexual abuse or exploitation of a child as one that "depicts a child engaging in a prohibited sexual act or in the simulation of such an act," N.J.S.A. 2C:24-4(b)(1)(a), applied to the videos in this case. Alternatively, the State argued the PCR court should wait until our Supreme Court decided <u>Higginbotham</u>.

The PCR court denied defendant's petition without an evidentiary hearing, issued a conforming order that same day, and explained its reasoning in a written opinion. It began by noting the arguments presented in defendant's petition focused on the contents of V1 and V2 containing "child erotica and not child pornography or child sexual abuse material." The court had the opportunity to review both videos and described them as follows:

> [V1] begins with a young female laying on a bed with a sheer see-through nightgown with only red thong panties, of a type not usually worn by children, underneath. The child rolls over onto her stomach with the nightgown hiked-up to reveal her bare buttocks. She rolls back and spreads her legs to reveal her crotch covered only by the panties. Throughout the video, she uses a sheer cover to wrap and unwrap herself in a

sensual manner. At one point[,] the child crawls on the bed with the front of her nightgown dropping down to reveal parts of her breasts. The video ends with the child blowing a kiss while the camera zooms in to a close-up of a sultry stare directed at the viewer.

In [V2], the same child is dressed in black panties, bra, garters, stockings, and boots. The child performs a routine of the type usually done by an exotic dancer, including multiple lascivious poses atop a ceramic sitting stool. As the child is sitting, she spreads her legs, revealing her crotch covered only by her panties. She then lowers her left and then her right bra straps and pulls the bottom of the bra up slightly. The child then turns around then crawls, revealing her bare buttocks.

The PCR court began its analysis by stating that neither V1 nor V2 depict a child performing a prohibited sexual act. However, the court found the videos "are both unquestionably intended to portray a child of tender years in a sexually suggestive manner as defined under the child erotica amendment of the child endangerment statute."

Addressing defendant's ineffective assistance of counsel argument, the PCR court first noted defendant's plea was entered in October 2019, and Higginbotham was not decided by us until March 2023. The court additionally recognized as of the time of defendant's plea, "[n]o other published or unpublished case had held the child erotica amendment unconstitutional, and . . . the Supreme Court promptly stayed the Higginbotham decision until the State's

11

petition for certification [could] be decided."  Recognizing the presumption that plea counsel exercised "'reasonable professional judgment' and 'sound trial strategy,'" as well as the "distorting effects of hindsight," the PCR court found "defendant's plea counsel [could not] be faulted for not anticipating that the statute would be declared unconstitutional almost four years after defendant entered his guilty plea."  (first quoting State v. Nash, 212 N.J. 518, 542 (2013); then quoting State v. Pierre, 223 N.J. 560, 579 (2015)).

Second, the PCR court distinguished the facts of defendant's case from those presented in Higginbotham.  It noted the defendant in Higginbotham possessed multiple photos and one video of a friend's daughter described by us as "innocuous," but "with 'graphic narratives' accompanying the video and 'sexually explicit statements' written over the photos."  (quoting Higginbotham, 475 N.J. Super. at 216).  "The child in Higginbotham was not posed or directed off-camera to act in a sensual manner as the child in [V1] and [V2] appears to have been; she was not purposefully dressed in provocative adult undergarments, and she did not engage in disturbing attempts to simulate erotic behavior."

Relying on State v. Buckner, 223 N.J. 1, 14 (2015) for the proposition there is a "'strong presumption of constitutionality that attaches' to any

legislative enactment," the PCR court concluded the contents of V1 and V2 "[are] not protected speech." Specifically, the court found "[e]xpanding the definition of child pornography to include 'images of children who are not engaged in sex acts or whose genitals are not lewdly displayed' does not . . . render the child erotica amendment overbroad, as the Higginbotham panel suggested." (quoting Higginbotham, 475 N.J. Super. at 233).

The PCR court concluded defendant's Ex Post Facto Clause argument was without merit. Relying on State v. Hester, 223 N.J. 381 (2018), the court began by explaining an ex post facto law is defined by two crucial elements. "It must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." (citing id. at 392).

While defendant argued the prosecution ran afoul of the Ex Post Facto Clauses of the United States and New Jersey Constitutions because Detective Lenart waited to secure a warrant until after the amendment went into effect, the PCR court noted defendant was not charged with conduct he engaged in prior to the enactment. Rather, "[b]oth counts of defendant's indictment allege[d] crimes committed 'on or about June 29, 2018,' after the effective date of the child erotica amendment." The court explained, "[t]he mere fact that conduct defendant had been engaging in became illegal . . . and that he was charged for continuing to

engage in this conduct after the child erotica amendment came into effect does not implicate the [E]x [P]ost [F]acto [C]lause." Therefore, because the amendment did not "impose[] additional punishment to an already completed crime," the PCR court rejected defendant's argument.

This appeal followed in which defendant raises the following points:

> I. AN ISSUE DEALING WITH THE CONSTITUTIONALITY OF A STATUTE[,] WHICH COULD NOT HAVE BEEN RAISED ON DIRECT APPEAL MAY BE HEARD IN AN APPLICATION FOR [PCR] PURSUANT TO R[ULE] 3:22-4(a)(1) (NOT RAISED BELOW).
>
> II. TRIAL DEFENSE COUNSEL FAILED TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE NEW JERSEY CONSTITUTION DUE TO HIS FAILURE TO RAISE A MOTION TO SUPPRESS EVIDENCE AND BY FAILING TO CHALLENGE THE CONSTITUTIONALITY OF THE "CHILD EROTICA" AMENDMENT TO THE CHILD ENDANGERMENT STATUTE.
>
> III. N.J.S.A. 2C:24-4[(b)](5)(a)(iii) IS FACIALLY VAGUE AND OVERBROAD IN VIOLATION OF THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 6 OF THE NEW JERSEY CONSTITUTION, AND THE STATUTE IS ALSO UNCONSTITUTIONAL AS APPLIED TO DEFENDANT.

14

IV.    N.J.S.A. 2C:24-4(b)(5)(a)(iii), AS APPLIED TO DEFENDANT IN THIS MATTER, VIOLATES HIS RIGHT NOT [TO] BE CONVICTED UNDER AN EX POST FACTO LAW IN VIOLATION OF ARTICLE I, SECTION 10, CLAUSE 1 OF THE UNITED STATES CONSTITUTION AND ARTICLE IV, SECTION 7, PARAGRAPH 3 OF THE NEW JERSEY CONSTITUTION.

II.

A.

Initially, defendant argues and the State does not contest that because we did not decide Higginbotham until after he had pled guilty and been sentenced, Rule 3:22-4(a)(1) permits a ground for relief to be stated for the first time in a PCR petition.  In his second point, defendant largely reprises his arguments made before the PCR court.  In this regard, defendant maintains his trial counsel was ineffective for "fail[ing] to file a motion to suppress despite the fact that the State's investigation into the contents of defendant's computer began in February 2017," and by "fail[ing] to challenge the constitutionality of the 'child erotica' amendment to N.J.S.A. 2C:24-4."

With respect to defendant's argument his counsel was constitutionally ineffective for failing to file a motion to suppress, defendant explains Detective Lenart began her investigation in November 2017, before the enactment of the "child erotica" amendment.  Defendant asserts "[t]here is no question that there

15                                    A-0024-23

was no statute in effect in November criminalizing the possession of 'child erotica[,]' . . . [y]et, the State continued its investigation by downloading the videos on the day on which the unconstitutional 'child erotica' [amendment] was enacted."  With respect to counsel's failure to challenge the constitutionality of the amendment to N.J.S.A. 2C:24-4, defendant maintains "despite the vague and overbroad verbiage of the amendment to N.J.S.A. 2C:24-4 involving 'child erotica,' counsel did not recognize the constitutional issues involved, and thus failed to move for dismissal."

In his third point, defendant challenges his conviction under N.J.S.A. 2C:24-4(b)(5)(a)(iii), arguing subsections (a) and (b) of the amended statute violate the First Amendment based on their overbreadth and vagueness, and contends we should follow our decision in Higginbotham.  Defendant maintains "the statute in issue is overbroad because it prohibits a substantial amount of protected expression.  It is also facially vague and vague as applied to defendant."  In support of these contentions, defendant cites Detective Lenart's admission "that she could not act against defendant until the date the statute was amended to include 'child erotica.'"  Further, defendant claims "[a]ny photograph of a partially clothed child, or a nearly naked child, may be viewed by some reviewing authority as sexually suggestive.  A photograph of a young

child which 'inappropriately sexualizes [that] child' invites multiple interpretations and as a result, selective prosecution." (second alteration in original).

As it relates to the amendment's alleged overbreadth, defendant argues the phrase "sexual exploitation of a child" must be read in conjunction with "the concept of 'child erotica.'"

> The verbiage of the statute is not narrowly drawn or described. Rather, it offers the State an almost <u>carte blanche</u> basis for selecting depictions[,] which a law enforcement officer may personally find offensive but which nonetheless should not be restricted pursuant to the First Amendment. Is sending a photograph or a video of a smiling child in a bathing suit to family members a crime under the statute? If the child is dancing in the video, does that violate the statute? If the child is on the beach, turns around, and bends down to pick up a toy, would that constitute "child erotica?"
>
> [(Emphasis in original).]

Based on the "distinct lack of clarity" of what exactly the "child erotica" amendment criminalizes, defendant argues it violates the First Amendment's prohibition on overbroad legislation.

Defendant argues the PCR court's constitutional analysis "was lacking" and faults it for comparing the depictions of the children involved here and in <u>Higginbotham</u>, rather than analyzing "the all-important verbiage of the

amendment." In his final point, defendant asserts "the indictment against him should be dismissed pursuant to federal and state constitutional authority due to its charging defendant pursuant to an ex post facto law." Again noting the fact the State's investigation began before the amendment to N.J.S.A. 2C:24-4 took effect and when possession of "child erotica" was not yet a crime, defendant claims "prosecuting [him] for innocent activities discovered in the State's investigation of [him], which subsequently became illegal, fits the definition of a prosecution through the use of an ex post facto law."

Defendant further contends the PCR court incorrectly focused on the fact he was not charged with conduct he engaged in prior to the enactment of the amendments to N.J.S.A. 2C:24-4. Citing State v. Perez, 220 N.J. 423 (2015), defendant argues "an ex post facto law encompasses the prosecution of acts[,] which were innocent when done. Defendant downloaded his materials long before the enactment of the amended statute. Accordingly, he was prosecuted pursuant to an ex post facto law."

B.

Because the PCR court did not hold an evidentiary hearing, we review both the factual inferences drawn from the record and any legal conclusions de novo. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also

Nash, 212 N.J. 518, 540-41 (2013). We review the PCR court's decision to proceed without an evidentiary hearing for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

### III.

To establish a prima facie claim of ineffective assistance of counsel, a defendant is required to establish not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced their right to a fair trial. Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

In other words, a defendant must show counsel's performance fell below "an objective standard of reasonableness." State v. Marshall, 148 N.J. 89, 156-57 (1997) (quoting Strickland, 466 U.S. at 687). There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

The defendant "must overcome the presumption that the attorney's decisions followed a sound strategic approach to the case." Pierre, 223 N.J. at 578-79.

Moreover, when a defendant asserts their attorney was ineffective by failing to file a specific motion, they must establish that the motion would have been successful. State v. O'Neal, 190 N.J. 601, 619 (2007). "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion . . . ." Ibid.; see also State v. Worlock, 117 N.J. 596, 625 (1990) (finding "[t]he failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel").

Under the second Strickland prong, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In analyzing the prejudice prong, "the overall strength of the evidence before the factfinder" is important because "a 'verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" State v. Gideon, 244 N.J. 538, 552 (2021) (quoting Pierre, 223 N.J. at 583).

"The United States Supreme Court has applied the Strickland test to challenges of guilty pleas based on ineffective assistance of counsel." State v.

DiFrisco, 137 N.J. 434, 456 (1994) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)). Where there is a guilty plea, "a defendant must show that (i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" Aburoumi, 464 N.J. Super. at 339 (App. Div. 2020) (alteration in original) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)). That is, a defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010); see also Aburoumi, 464 N.J. Super. at 339.

Applying these legal principles, we conclude defendant's counsel's representation was not ineffective. We are unpersuaded by defendant's argument his trial counsel provided ineffective assistance by "fail[ing] to file a motion to suppress despite the fact that the State's investigation into the contents of defendant's computer began in February 2017," because, while it is true the State's investigation into defendant began before the enactment of the "child erotica" amendment, this does not mean, as defendant argues, "the State began its prosecution based upon what had been legally possessed materials."

The contents of V1 and V2 were illegal to possess and distribute prior to the amendment to N.J.S.A. 2C:24-4 taking effect. Defendant was indicted under N.J.S.A. 2C:24-4(b)(5)(a)(iii) for knowingly making available to download images "depicting the sexual exploitation or abuse of a child." See N.J.S.A. 2C:24-4(b)(1). The pre-amendment definition of an "item depicting the sexual exploitation or abuse of a child" was, and remains, an image that "depicts a child engaging in a prohibited sexual act or in the simulation of such an act." N.J.S.A. 2C:24-4(b)(1)(a).

The statute defines "prohibited sexual act" as "[a]ny act of sexual penetration or sexual contact as defined in N.J.S.[A.] 2C:14-1." N.J.S.A. 2C:24-4(b)(1). N.J.S.A. 2C:14-1(d) defines "sexual contact" as "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of . . . sexually arousing or sexually gratifying the actor." Our Supreme Court has interpreted sexual contact to encompass three scenarios: a defendant touching himself, a defendant touching a victim, and a victim touching a defendant. State v. Zeidell, 154 N.J. 417, 428 (1998). "Intimate parts" includes an individual's "sexual organs, genital area, anal area, inner thigh, groin, buttock[,] or breast." N.J.S.A. 2C:14-1(e).

Based upon our review of V1 and V2,[2] we are convinced the contents of the videos fall within the pre-amendment definition, and to the extent the PCR court concluded otherwise, it erred. In both V1 and V2, the child touches her breast area, presents her buttocks to the camera, and spreads her legs to make her clothed vaginal area visible to the camera. Moreover, the fact that the videos have been edited to be set to music and the child makes use of props makes clear the purpose of the videos is to "sexually arous[e] or sexually gratify[] the actor." See N.J.S.A. 2C:14-1(d). It is also clear the child victim was taking direction from someone off-screen, as she consistently looked off-camera before performing certain actions.

While we acknowledge Zeidell described three situations in which sexual contact may occur, 154 N.J. at 428, we do not read that opinion as limiting the statute to only three scenarios. Rather, we read N.J.S.A. 2C:14-1(d) to encompass four permutations of sexual contact, inclusive of victim upon victim touching; and defendant does not argue to the contrary. Although the Zeidell court did not consider this possible scenario when describing the ways a

---

[2] In accordance with the procedures outlined in State v. Scoles, 214 N.J. 236 (2013), we reviewed the videos prior to oral argument in this matter. Our review confirmed the accuracy of the description of the videos provided by the PCR court.

defendant could be guilty of a violation of the statute, we are convinced the Legislature intended to punish this behavior as well. We are confident the Legislature intended the statute to cover an incident such as this, where a minor child was coerced to touch her intimate areas to "sexually gratify[] the actor." As such, defendant cannot show that filing a motion to suppress on this basis would have been successful.[3] See O'Neal, 190 N.J. at 619.

Even if V1 and V2 do not fall within the pre-amendment definition of an image "depicting the sexual exploitation or abuse of a child," we are persuaded defendant's ineffective assistance of counsel argument on this point also fails because he was neither charged with nor convicted of pre-amendment conduct. Rather, as made clear in the indictment and in defendant's plea allocution, defendant was charged with and pled guilty to distributing or making available to download images "depicting the sexual exploitation or abuse of a child" on February 8, 2018. Therefore, contrary to defendant's argument that trial counsel should have filed a motion to suppress because he "had not engaged in any illegal activities" when the State began its investigation, defendant was neither

---

[3] Defendant does not argue his conduct does not qualify under the pre-amendment definition to N.J.S.A. 2C:24-4(b)(1).

charged with nor pled guilty to conduct he engaged in prior to the enactment of the "child erotica" amendment.

With respect to defendant's argument his trial counsel also provided constitutionally ineffective assistance by "fail[ing] to challenge the constitutionality of the 'child erotica' amendment," we are similarly unpersuaded.  First, as will be discussed in more detail below, neither subsection (a) nor (b) of the amended statute violates the First Amendment.  Therefore, trial counsel was not ineffective for failing to file a motion to dismiss that would have failed.  See O'Neal, 190 N.J. at 619 ("It is not ineffective assistance of counsel for defense counsel not to file a meritless motion . . . .").

Second, defendant pled guilty in October 2019.  We did not decide Higginbotham until March 2023.  See generally Higginbotham, 475 N.J. Super. 205.  "In evaluating the performance of defendant's trial counsel, we must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  Pierre, 223 N.J. at 579 (omission in original) (quoting Strickland, 223 N.J. at 689).

As of the time of defendant's plea, he was facing two second-degree charges and a potential sentence of up to twenty years imprisonment.  See

N.J.S.A. 2C:43-6(a)(2). Given the potentially severe sentence defendant faced, and that no decision of this State at the time had held the "child erotica" amendment unconstitutional, we conclude defendant's counsel was not constitutionally ineffective in failing to file a motion to dismiss. We further conclude it would not have been "rational under the circumstances" for defendant to reject the State's plea offer in light of the incriminatory evidence (i.e., V1 and V2) seized by the State. Padilla, 559 U.S. at 372.

IV.

For purposes of completeness, we next address defendant's contention that subsections (a) and (b) of the amended statute are violative of the First Amendment based on their alleged overbreadth and vagueness. Because we conclude subsections (a) and (b) criminalize material that falls within the definition of child pornography, and are neither overbroad nor vague, we reject defendant's arguments.

A.

We begin by addressing the substantive legal principles that will guide our analysis on these issues. Our courts presume statutes are constitutionally valid. Buckner, 223 N.J. at 14. A statute will not be declared unconstitutional "unless its repugnancy to the Constitution is clear beyond a reasonable doubt."

26

State v. Smith, 251 N.J. 244, 263 (2022) (quoting State v. Lenihan, 219 N.J. 251, 266 (2014)). The party challenging the validity of the statute bears this "heavy burden" of proof. Buckner, 223 N.J. at 14 (quoting State v. Trump Hotels & Casino Resorts, Inc., 160 N.J. 505, 526 (1999)). "Where a statute 'criminalizes expressive activity,' we construe it 'narrowly to avoid any conflict with the constitutional right to free speech.'" State v. B.A., 458 N.J. Super. 391, 407 (App. Div. 2019) (quoting State v. Burkert, 231 N.J. 257, 277 (2017)).

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31, 585 U.S. 878, 892 (2018). The First Amendment's protections, while substantial, are not without limitations:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.
>
> [Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942).]

A-0024-23

A criminal statute challenged as vague is subject to "sharper scrutiny and given more exacting and critical assessment under the vagueness doctrine than civil enactments." State v. Cameron, 100 N.J. 586, 592 (1985). "A statute is facially or perfectly vague if 'there is no conduct that it proscribes with sufficient certainty.'" State v. Saunders, 302 N.J. Super. 509, 521 (App. Div. 1997) (quoting Cameron, 100 N.J. at 593).

A party may challenge a statute as either facially vague or vague as applied. Lenihan, 219 N.J. at 267 (quoting State v. Maldonado, 137 N.J. 536, 563 (1994)). "A law is facially vague if it is vague in all applications." Ibid. (citing Maldonado, 137 N.J. at 563). Where a statute "is challenged as vague as applied[, it] must lack sufficient clarity respecting the conduct against which it is sought to be enforced." Ibid. (quoting Visiting Homemaker Serv. of Hudson Cnty. v. Bd. of Chosen Freeholders of Cnty. of Hudson, 380 N.J. Super. 596, 612 (App. Div. 2005)).

Overbroad statutes "suffer from a different flaw. They invite 'excessive governmental intrusion into protected areas' by 'extend[ing] too far.'" State v. Carter, 247 N.J. 488, 518 (2021) (alteration in original) (quoting Karins v. Atlantic City, 152 N.J. 532, 544 (1998)). A law may be held facially overbroad in violation of the First Amendment "[i]f the challenger demonstrates that the

28

statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" Higginbotham, 257 N.J. at 277-78 (alteration in original) (quoting United States v. Hansen, 599 U.S. 762, 770 (2023); United States v. Williams, 553 U.S. 285, 292 (2008)).

As our Supreme Court has explained, "[t]he two claims differ analytically":

> The vagueness concept . . . rests on principles of procedural due process; it demands that a law be sufficiently clear and precise so that people are given fair notice and adequate warning of the law's reach. The overbreadth concept, on the other hand, rests on principles of substantive due process; the question is not whether the law's meaning is sufficiently clear, but whether the reach of the law extends too far. The evil of an overbroad law is that in proscribing constitutionally protected activity, it may reach farther than is permitted or necessary to fulfill the state's interests.
>
> [Carter, 247 N.J. at 518 (omission in original) (quoting Town Tobacconist v. Kimmelman, 94 N.J. 85, 125 n.21 (1983)).]

As noted, "[n]arrow categories of speech that are historically unprotected by the First Amendment 'include fighting words, obscenity, child pornography, incitement, defamation, true threats, and speech integral to criminal conduct.'" Higginbotham, 257 N.J. at 274 (quoting State v. Hill, 256 N.J. 266, 281 (2024)). In Miller v. California, the United States Supreme Court redefined the test for

obscenity.  413 U.S. 15, 24 (1973).  Under Miller, speech is deemed obscene if: (1) "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest";[4] (2) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law"; and (3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."  Ibid. (quotations omitted).  While states may criminalize the distribution of obscene material, "'mere possession [of obscene material] by the individual in the privacy of his own home' is constitutionally protected."  Higginbotham, 257 N.J. at 274-75 (alteration in original) (quoting Stanley v. Georgia, 394 U.S. 557, 568 (1969)).

In New York v. Ferber, 458 U.S. 747 (1982), the Supreme Court created a separate set of standards for child pornography.  Specifically, the Court held that "[c]hild pornography need not meet the Miller obscenity standard to be proscribed; it is a separate type of speech that is categorically unprotected by the First Amendment."  Higginbotham, 257 N.J. at 275 (citing Ashcroft v. Free Speech Coal., 535 U.S. 234, 240 (2002)).  Moreover, unlike obscenity, states

---

[4] The community standard is a local standard, not a national one.  Miller, 413 U.S. at 30.

A-0024-23

may constitutionally prohibit the possession and viewing of child pornography within one's home. Ibid. (quoting Osborne v. Ohio, 495 U.S. 103, 111 (1990)).

Like the obscenity standard, however, there are limits to what the State may criminalize as child pornography. Ferber, 458 U.S. at 764. Specifically, "the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed. . . . The category of 'sexual conduct' proscribed must also be suitably limited and described." Ibid. Ferber summarized the test for child pornography as follows:

> A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole. . . . [T]he distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection.

> [Id. at 764-65.]

In Higginbotham, our Supreme Court applied these principles to determine "whether subsection (c) [of the amended statute] is substantially overbroad in violation of the First Amendment to the United States Constitution." 257 N.J. at 267. There, the defendant possessed and distributed multiple photographs and one video of his friend's minor daughter

31

"superimposed [with] sexually explicit text." Id. at 267-69. While Higginbotham conceded the text he superimposed on the images was "obscene," the photographs and video were otherwise innocuous. Ibid. The State obtained an indictment against Higginbotham for multiple violations under N.J.S.A. 2C:24-4. See id. at 269. Specifically, the indictment "alleged that [Higginbotham] portrayed a child 'in a sexually suggestive manner by otherwise depicting a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where the depiction does not have serious literary, artistic, political[,] or scientific value.'" Ibid.

Higginbotham subsequently moved to dismiss the indictment, arguing "subsection (c) was unconstitutionally vague and overbroad in violation of the First Amendment to the United States Constitution, either on its face or as applied to him." Ibid. While the trial court denied his motion, we reversed. Id. at 270; see Higginbotham, 475 N.J. Super. at 215. We concluded all three subsections of the "child erotica amendment" were both unconstitutionally overbroad and vague. Higginbotham, 475 N.J. Super. at 233-40.

We reasoned the "child erotica amendment" was overbroad because it:

> (1) expand[ed] the definition of child pornography to include images of children who are not engaged in sex acts or whose genitals are not lewdly displayed; and (2) regulate[d] the private possession of child erotica,

32

which, in addition to not qualifying as child pornography, is not defined using the terms of the Miller obscenity standard.

[Id. at 233.]

Because we determined the "child erotica amendment" was impermissibly overbroad, we also concluded it had "the effect of being impermissibly vague. Based on the [a]mendment's definition of 'portray a child in a sexually suggestive manner,' any image of a child could appeal to sexual interests and thus be proscribed. A person of ordinary intelligence would therefore not understand the limits of permissible conduct." Id. at 239.

Our Supreme Court granted the State's petition for certification. See generally State v. Higginbotham, 254 N.J. 515 (2023). The Court began its analysis by describing the 2018 amendment to N.J.S.A. 2C:24-4. Higginbotham, 257 N.J. at 278-80. It explained that "[p]rior to February 2018, 'an item depicting the sexual exploitation or abuse of a child' was defined only as an image that 'depicts a child engaging in a prohibited sexual act or in the simulation of such an act.'" Id. at 278 (quoting N.J.S.A. 2C:24-4(b)(1) (2017)). The Legislature, however, expanded the statute such that an "item depicting the sexual exploitation or abuse of a child" became defined as an image which: "(a) depicts a child engaging in a prohibited sexual act or in the simulation of such

an act; or (b) portrays a child in a sexually suggestive manner." Id. at 279

(emphasis in original) (quoting N.J.S.A. 2C:24-4(b)(1)).

The amended statute defined "portray a child in a sexually suggestive

manner" as:

> (a) to depict a child's less than completely and opaquely covered intimate parts, as defined in N.J.S.A. 2C:14-1, in a manner that, by means of the posing, composition, format, or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the child; or
>
> (b) to depict any form of contact with a child's intimate parts, as defined in N.J.S.A. 2C:14-1, in a manner that, by means of the posing, composition, format, or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the child; or
>
> (c) to otherwise depict a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where the depiction does not have serious literary, artistic, political, or scientific value.
>
> [Ibid. (emphasis in original) (quoting N.J.S.A. 2C:24-4(b)(1)).]

The Court agreed with our conclusion that subsection (c) was

unconstitutionally overbroad because it "criminalize[d] a substantial amount of

material that is neither obscene nor child pornography, and therefore 'does not

fall outside the protection of the First Amendment.'" Id. at 281 (quoting Free

34

Speech Coal., 535 U.S. at 251). It noted while subsection (c) did incorporate the third prong of the Miller standard, it failed to address the first and second prongs, therefore criminalizing protected speech. Id. at 282.

While the Court held that subsection (c) of the amended statute was unconstitutional, it expressly declined to address the constitutionality of subsections (a) and (b) because "[d]efendant was not charged under subsections (a) or (b). He did not challenge subsections (a) or (b) before the trial court or the Appellate Division. And subsection (c) is plainly severable from subsections (a) and (b)." Id. at 288. Notably, however, it explained how subsections (a) and (b) differed substantively from the constitutionally infirm subsection (c). See id. at 281-85.

Indeed, "subsections (a) and (b) both explicitly require . . . the image 'emit[] sensuality with sufficient impact to concentrate prurient interest on the child.' Subsection (c) does not. Likewise, subsections (a) and (b) both explicitly require that the depiction be of a child's 'intimate parts.' Not so for subsection (c)." Id. at 285. For these reasons, it held that subsection (c) was substantially overbroad in violation of the First Amendment and left open the question of the validity of subsections (a) and (b). See id. at 288.

A-0024-23

B.

Applying these legal principles, we are convinced subsections (a) and (b) criminalize the possession and distribution of child pornography and are neither overbroad nor vague in violation of the First Amendment. To the extent our conclusion is contrary to our prior decision in Higginbotham, 475 N.J. Super. at 233-40, we expressly reject it.

First, subsections (a) and (b) criminalize the possession and distribution of images qualifying as child pornography, a form of unprotected speech. Higginbotham, 257 N.J. at 274 (citing Hill, 256 N.J. at 281). "The [United States] Supreme Court has upheld statutes that define child pornography as the portrayal of 'sexual conduct' or 'sexual acts' by children, . . . [which] include[s] the lewd or lascivious exhibition of, or graphic focus on, a child's 'genitals or pubic area.'" Id. at 282 (quoting Ferber, 458 U.S. at 762, 764) ("Federal statutes and statutes from other states have also included within the definition the lascivious or lewd exhibition of uncovered or transparently clothed buttocks or breasts.").

In reaching this decision, we are guided by the Higginbotham Court's analysis with respect to how subsections (a) and (b) differ substantively from the constitutionally infirm subsection (c). See State v. Breitweiser, 373 N.J.

A-0024-23

Super. 271, 282-83 (App. Div. 2004) (explaining as an intermediate court, "we consider ourselves bound by carefully considered dictum from the Supreme Court"). Unlike subsection (c), subsections (a) and (b) require that images depict "a child's less than completely and opaquely covered intimate parts" or "any form of contact with a child's intimate parts," as defined in N.J.S.A. 2C:14-1. N.J.S.A. 2C:24-4(b)(1). As noted, the United States Supreme Court has upheld child pornography statutes that "includ[e] the lewd or lascivious exhibition of, or graphic focus on, a child's 'genitals or pubic area,'" Higginbotham, 257 N.J. at 282, and federal and several state child pornography statutes define a child's intimate parts consistent with N.J.S.A. 2C:14-1, id. at 282 n.4 (citing 18 U.S.C. § 2256(2)(A)(v); 720 Ill. Comp. Stat. 5/11-20.1(a)(i)(vii); Mass Gen. Laws ch. 272, § 29C(vii); and Utah Code Ann. § 76-5b103(10)(e)).

Moreover, subsections (a) and (b) both require the depiction "emit[] sensuality with sufficient impact to concentrate prurient interest on the child." Ibid.; see also Black's Law Dictionary 1484 (12th ed. 2024) (defining prurient interest as "[a] morbid, unhealthy fixation with sex, nudity, or obscene or pornographic materials"). Therefore, subsections (a) and (b) criminalize the

possession and distribution of child pornography, an unprotected category of speech under the First Amendment.

Additionally, subsections (a) and (b) are not overbroad. They do not "criminalize[] a substantial amount of material that is neither obscene nor child pornography." Higginbotham, 257 N.J. at 281 (quoting Free Speech Coal., 535 U.S. at 251).

Subsections (a) and (b) are initially limited by the requirement that images must depict a child's "intimate parts," as defined in N.J.S.A. 2C:14-1. N.J.S.A. 2C:24-4(b)(1). The statute's scope is further narrowed by the requirement that the images must depict certain conduct in relation to a child's intimate parts: for subsection (a), "a child's less than completely and opaquely covered intimate parts"; and for subsection (b), "any form of contact with a child's intimate parts." Ibid. And the statute's reach is limited even further by the requirement, common to both subsections (a) and (b), that "by means of the posing, composition, format, or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the child." Ibid.

The combination of these three requirements prevents subsections (a) and (b) from "'prohibit[ing] a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" Hansen, 599 U.S. at 770 (quoting Williams, 553

U.S. at 292). For example, the <u>Higginbotham</u> Court agreed with our court that "subsection (c) could criminalize photos of children on the beach, at sporting events, or performing in a dance recital or beauty pageant." 257 N.J. at 283. However, none of these examples would fall within the reach of subsections (a) or (b) because they were not created with the intent of "concentrat[ing] prurient interest on the child."

In support of his argument that subsections (a) and (b) are impermissibly overbroad, defendant relies upon <u>Ex parte Lowry</u>, 639 S.W.3d 151, 169 (Tex. App. Houston 1st Dist., Oct. 26, 2021), <u>rev'd</u>, 693 S.W.3d 388 (Tex. Ct. Crim. App. 2024), which held a statute like N.J.S.A. 2C:24-4(b)(1) unconstitutional. However, the Texas Court of Criminal Appeals reversed that decision finding "Section 43.262 of the Texas Penal Code is not an unconstitutional restriction on protected speech." <u>See</u> <u>Lowry</u>, 693 S.W.3d at 419. Indeed, that decision reinforces our conclusion as the Texas Court of Criminal Appeals concluded a similarly worded statute regulated only child pornography. <u>Id.</u> at 418.

For these reasons, defendant's vagueness argument also fails. The three requirements present in subsections (a) and (b) do not "lack sufficient clarity respecting the conduct against which it is sought to be enforced." <u>Lenihan</u>, 219

N.J. at 267 (quoting Visiting Homemaker Serv. of Hudson Cnty., 380 N.J. Super. at 612).

## V.

Defendant's final argument is that his conviction must be reversed because he was charged pursuant to an ex post facto law. He is incorrect.

Both the United States and New Jersey Constitutions prohibit the Legislature from passing an ex post facto law.[5] U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law."); N.J. Const. art. IV, § 7, ¶ 3 ("The Legislature shall not pass any . . . ex post facto law."). The purpose of restricting ex post facto laws is twofold: "[i]t assures that individuals can rely on laws until they are 'explicitly changed,' and it restricts the government from passing 'potentially vindictive legislation.'" State v. Brown, 245 N.J. 78, 88 (2021) (quoting Riley v. State Parole Bd., 219 N.J. 270, 284 (2014)).

An ex post facto law is defined by two elements: "[F]irst, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" Hester, 223 N.J. at 392 (quoting Miller v. Florida, 482 U.S. 423, 430 (1987)). "[A] law that

---

[5] Our Supreme Court has instructed that New Jersey's Ex Post Fact Clause is to be interpreted "in the same manner as its federal counterpart." Hester, 223 N.J. at 392.

A-0024-23

retroactively 'imposes additional punishment to an already completed crime' disadvantages a defendant, and therefore is a prohibited ex post facto law." Ibid. (quoting Riley, 219 N.J. at 285).

Applying these principles, we conclude the State's prosecution of defendant did not violate the Ex Post Facto Clauses of the United States and New Jersey Constitutions. The contents of V1 and V2 fall within the definition of an "item depicting the sexual exploitation or abuse of a child" contained in N.J.S.A. 2C:24-4(b)(1)(a). Therefore, defendant's acts were not "innocent" in 2017, as he claims.

Even assuming the contents of V1 and V2 do not qualify under the pre-amendment definition, defendant's prosecution still did not run afoul of the Ex Post Facto Clause. As both the State and PCR court aptly noted, defendant was neither charged with nor convicted for his 2017 conduct. Defendant was charged and convicted for conduct he engaged in on February 8, 2018, after the amended statute went into effect. In other words, defendant was neither charged with nor pled guilty to conduct that constituted an "already completed crime" because he continued to possess the videos after the amended statute came into effect. Hester, 223 N.J. at 392 (quoting Riley, 219 N.J. at 285). Therefore,

A-0024-23

defendant's conviction was neither "retrospective" nor was he "disadvantage[d]." See ibid.

To the extent we have not addressed any of defendant's remaining arguments it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0024-23